LILLIAN LYNN, Respondent, *v.* JAY J. LYNN, Appellant.

Argued October 12, 1950; decided March 8, 1951.

*Herman A. Benjamin* and *Robert Satter* for appellant. I. Under the law of New York a valid divorce, whether foreign or domestic, granted in an action in which both parties appeared, terminates the legal effectiveness of a prior separate maintenance decree. (*Tonjes* v. *Tonjes,* 14 App. Div. 542.) II. An *ex parte* divorce does not necessarily terminate the provisions for support in a prior separation decree. (*Estin* v. *Estin,* 296 N. Y. 308; *Matthews* v. *Matthews,* 247 N. Y. 32; *" Kurski "* v. *" Kurski ",* 185 Misc. 97; *Franklin* v. *Franklin,* 189 Misc. 442; *Esenwein* v. *Commonwealth,* 325 U. S. 279; *Security Trust Co. of Rochester* v. *Woodward,* 73 F. Supp. 667.) III. A divorce, foreign or domestic, granted on appearance of both parties, terminates the legal effectiveness of a prior separation decree. (*Burton* v. *Burton,* 150 App. Div. 790; *Holmes* v. *Holmes,* 155 F. 2d 737; *Scheinwald* v. *Scheinwald,* 231 App. Div. 757; *Richards* v. *Richards,* 87 Misc. 134, 167 App. Div. 922; *Helman* v. *Helman,* 191 Misc. 201; *Verbeck* v. *Verbeck,* 187 Misc. 750.) IV. The effect of a divorce, granted on the appearance of both parties, in terminating a prior separate maintenance order is not dependent on whether or not the question of alimony was actually litigated. (*Richards* v. *Richards,* 87 Misc. 134, 167 App. Div. 922; *Verbeck* v. *Verbeck,* 187 Misc. 750; *Bloedorn* v. *Bloedorn,* 76 F. 2d 812; *Jones* v. *Jones,* 249 Ala. 386; *Rosa* v. *Rosa,* 296 Mass. 271; *Fein* v. *Fein,* 261 N. Y. 441; *Johnson* v. *Johnson,* 206 N. Y. 561; *Stokes* v. *Footes,* 172 N. Y. 327; *Sherrer* v. *Sherrer,* 334 U. S. 343.) V. The full faith and credit clause of the United States Constitution requires the courts of this State to give to the valid Nevada decree the effect of terminating the support

provisions of the prior separation decree. (*Herrick* v. *Herrick*, 25 P. 2d 378 [Nev.]; *Durlacher* v. *Durlacher*, 123 F. 2d 70; *Bassett* v. *Bassett*, 51 F. Supp. 545; *Halvey* v. *Halvey*, 330 U. S. 610; *Davis* v. *Davis*, 305 U. S. 32; *Williams* v. *North Carolina*, 317 U. S. 287.)  VI.  A New York divorce granted on appearance of both parties supersedes a support order and our courts must not discriminate against the Nevada divorce by denying it the same effect.  (*Scheinwald* v. *Scheinwald*, 231 App. Div. 757; *Richards* v. *Richards*, 87 Misc. 134, 167 App. Div. 922.)  VII.  The *Estin* case does not permit this court to evade the requirements of the full faith and credit clause, because in the instant case the Nevada court had full jurisdiction over the parties and as a result over the divorce and all the incidents of marriage.  (*Estin* v. *Estin*, 296 N. Y. 308, 334 U. S. 541; *Kreiger* v. *Kreiger*, 334 U. S. 555; *Security Trust Co. of Rochester* v. *Woodward*, 73 F. Supp. 667; *Helman* v. *Helman*, 191 Misc. 201; *Ravaud* v. *Ravaud*, 273 App. Div. 507.)  VIII.  The Nevada divorce is immune from collateral attack and must be recognized as valid by the New York courts.  (*Davis* v. *Davis*, 305 U. S. 32; *Sherrer* v. *Sherrer*, 334 U. S. 343; *Coe* v. *Coe*, 334 U. S. 378; *Kinnier* v. *Kinnier*, 45 N. Y. 535; *Glaser* v. *Glaser*, 276 N. Y. 296; *Schacht* v. *Schacht*, 295 N. Y. 439.)  IX.  The Nevada court did not fail to give full faith and credit to the prior New York separation decree and, even if it did, New York cannot for that reason refuse to give full faith and credit to the Nevada divorce decree.  (*Durlacher* v. *Durlacher*, 123 F. 2d 70; *Bassett* v. *Bassett*, 51 F. Supp. 545; *Herrick* v. *Herrick*, 25 P. 2d 378 [Nev.]; *Fauntleroy* v. *Lum*, 210 U. S. 230; *Hoyt* v. *Hoyt*, 265 App. Div. 223; *Hunt* v. *Hunt*, 72 N. Y. 217; *Field* v. *Chronik*, 190 App. Div. 501.)  X.  The Nevada divorce decree is *res judicata* on the issue of alimony and appellant is not estopped from asserting this defense.  (*Sweeney* v. *Sweeney*, 179 P. 638 [Nev.]; *Galusha* v. *Galusha*, 138 N. Y. 272; *Cain* v. *Cain*, 188 App. Div. 780; *Bell* v. *Bell*, 171 Misc. 605.)  XI.  Appellant is not estopped from asserting the *res judicata* effect of the Nevada divorce on the matter of alimony.  (*Hartford Accident & Ind. Co.* v. *Oles*, 152 Misc. 876; *Thompson* v. *Simpson*, 128 N. Y. 270; *Deering* v. *Schreyer*, 110 App. Div. 200.)  XII.  The law of New York has confined the doctrine of divisible divorce strictly to an *ex parte* divorce.  That law should *not* be changed.  (*Matthews* v. *Matthews*, 247 N. Y. 32.)

*Samuel Gottlieb, Walter P. Arenwald* and *Louis P. Neustein* for respondent. I. Plaintiff's New York decree of separate maintenance survived defendant's Nevada divorce decree. (*Estin* v. *Estin,* 296 N. Y. 308, 334 U. S. 541; *Kreiger* v. *Kreiger,* 297 N. Y. 530, 334 U. S. 555; *Gittelman* v. *Gittelman,* 192 Misc. 334; *Coe* v. *Coe,* 334 U. S. 378; *Sherrer* v. *Sherrer,* 334 U. S. 343; *Matthews* v. *Matthews,* 247 N. Y. 32.) II. The Nevada court in the instant case made the matter of the termination of the marital status her dominant concern and since no issue of support was tendered or litigated, expressly refused to terminate the support obligations on the part of the husband. (*Flood* v. *Theising,* 273 App. Div. 548, 298 N. Y. 700.) III. Since the issue of support was not tendered in the Nevada divorce proceedings, no binding adjudication on that issue could be or, in fact, was made. The husband, therefore, may not invoke the doctrine of *res judicata* with respect thereto. (*Estin* v. *Estin,* 334 U. S. 541; *Kreiger* v. *Kreiger,* 334 U. S. 555; *Cotrone* v. *Iervolino,* 269 App. Div. 101; *Karameros* v. *Luther,* 279 N. Y. 87.) IV. It is the traditional policy of this State to preserve the support obligations, notwithstanding dissolution of the marital status. (*Johnson* v. *Johnson,* 295 N. Y. 477; *Jacob & Youngs, Inc.,* v. *Kent,* 230 N. Y. 239; *Matter of Fowles,* 222 N. Y. 222; *Roth* v. *Roth,* 77 Misc. 673; *Carpenter* v. *Osborn,* 102 N. Y. 552; *Galusha* v. *Galusha,* 116 N. Y. 635; *Randolph* v. *Field,* 165 App. Div. 279.) V. In order to prevent its citizens from becoming public charges, our courts may constitutionally hold that a domestic decree of separation survives a foreign decree of divorce. (*Senor* v. *Senor,* 272 App. Div. 306, 297 N. Y. 800.) VI. Defendant by his conduct is estopped from challenging the validity of the decree of separation herein. (*Daine* v. *Commissioner of Internal Revenue,* 168 F. 2d 449; *Smith* v. *Commissioner of Internal Revenue,* 168 F. 2d 446; *Commissioner of Internal Revenue* v. *Murray,* 174 F. 2d 816.) VII. The substantial tax benefits that accrued to defendant and the detriment suffered by plaintiff may be concretely illustrated. (*Rothschild* v. *Title Guar. & Trust Co.,* 204 N. Y. 458.) VIII. Plaintiff's decree of separation should and must be accorded full faith and credit. The Nevada court improperly split the husband's alleged cause of action for cruelty in order to circumvent the effect of such decree. (*Sistare* v. *Sistare,* 218

U. S. 1; *Barber* v. *Barber,* 323 U. S. 77; *Griffin* v. *Griffin,* 327 U. S. 220; *Fox* v. *Fox,* 263 N. Y. 68; *Bassett* v. *Bassett,* 141 F. 2d 954.) IX. The Nevada decree obtained by defendant is open to challenge because of his fraud, which resulted in a denial to the wife of a full opportunity to contest the issue of domicile. (*Texas* v. *Florida,* 306 U. S. 398.)

FULD, J. The primary question posed is whether the doctrine of " divisible divorce ", heretofore enunciated and applied in cases where the out-of-state divorce decree was granted to the husband *ex parte,* is to be extended to cover situations where the wife appeared in the divorce proceedings.

Plaintiff and defendant, married in New York City in 1926, were separated by a decree of the Supreme Court of this state rendered in favor of plaintiff wife in January of 1942, upon findings that defendant had willfully abandoned her without cause or justification. The judgment also awarded plaintiff custody of the parties' only child, a girl then fourteen years old, and granted an allowance of $85 a week, subject to modification upon a showing of changed circumstances, for the support of plaintiff and the child.

Some fifteen months later, in April, 1943, the husband filed suit in Nevada for divorce on the ground of extreme cruelty. The wife appeared in the action both personally and by attorney, disputing not only his claim to a bona fide domicile in Nevada but contesting the suit on the merits. Following a trial, the court granted the husband a decree of divorce, upon findings that he was, and for more than six weeks had been, a bona fide resident of Reno, Nevada, and that the wife had been guilty of a course of conduct amounting to extreme cruelty subsequent to. the date of the earlier New York separation judgment. The decree of the Nevada court made no provision for the support of the wife or child, and both its decision and decree recited that the wife had made no claim for alimony or support. The court, however, refused the husband's requests for a finding that the wife had waived all claim for such relief and for a conclusion of law that it be denied to her.

Shortly after the granting of the Nevada divorce, the husband returned to New York City and married another woman. He nevertheless continued to pay plaintiff the $85 a week called for

by the earlier New York judgment, and for such amounts took the benefit of tax deductions in connection with his federal and state income taxes.

In June of 1948, plaintiff, by motion entitled in the New York suit, applied for an order amending the final judgment of separation. Claiming that defendant's income had substantially increased since 1942, she sought to have the alimony increased from $85 to $200 a week. Defendant opposed the application on the ground, among others, that the Nevada divorce decree operated to deprive plaintiff of any right to alimony.

The court at Special Term denied plaintiff's application, holding that the Nevada divorce terminated the obligation to pay alimony imposed by the New York judgment. The Appellate Division, by a three to two vote, reversed, holding that the New York alimony judgment continued valid, upon the grounds (1) that the New York courts were not required to give full faith and credit to the Nevada decree because the Nevada court had failed to give full faith and credit to the New York judgment; (2) that, by expressly refraining from passing on the matter of the husband's obligation of support, the Nevada court left in full force and effect the alimony provisions of the New York judgment; and (3) that the husband was estopped from pleading the Nevada decree as *res judicata* on the question of alimony.

The Appellate Division granted defendant leave to appeal to this court and certified two questions of law: the first asks whether plaintiff's New York separation judgment survived defendant's Nevada decree of divorce, and the second — as we interpret it (see *Hession* v. *Sari Corp.*, 283 N. Y. 262, 264; see, also, Cohen, The Powers of the New York Court of Appeals, § 82) — whether the court at Special Term had the power to grant plaintiff's application to amend her separation decree so as to provide for an increase in alimony. Since the appeal presents questions affecting the rights of plaintiff wife alone, we neither consider nor treat the rights of the child of the parties, who has apparently attained her majority. (Cf. *Johnson* v. *Muelberger*, 340 U. S. 581.)

The " divisible divorce ", anomalous though it may at first appear, has become a recognized concept; it is now familiar law

that a divorce decree may be completely effective to dissolve a . marriage and yet completely ineffectual to alter certain legal and economic incidents of that marriage. (See *Estin* v. *Estin,* 296 N. Y. 308, affd. 334 U. S. 541; *Kreiger* v. *Kreiger,* 297 N. Y. 530, affd. 334 U. S. 555; *Barber* v. *Barber,* 21 How. [U. S.] 582.) With that in mind, we turn to the case before us.

The Nevada decree rendered in favor of the husband unquestionably and validly put an end to the parties' marital status; since plaintiff appeared and participated in the Nevada action, she may not in this state relitigate the issue of domicile or the jurisdiction of the Nevada court to grant the divorce. (See *Johnson* v. *Muelberger, supra,* 340 U. S. 581; *Sherrer* v. *Sherrer,* 334 U. S. 343; *Coe* v. *Coe,* 334 U. S. 378; *Davis* v. *Davis,* 305 U. S. 32; *Senor* v. *Senor,* 297 N. Y. 800; *Matter of Rhinelander,* 290 N. Y. 31, 36–37; *Glaser* v. *Glaser,* 276 N. Y. 296.) And even if we were to accept the view of the Appellate Division that the Nevada court, in decreeing the divorce, failed to give appropriate effect to the adjudication made in the New York action, the courts of this state would still be required to accord full faith and credit to the·Nevada decree. Nevada's asserted denial of full faith does not justify or permit retaliation by any other state. As the decisions make plain, plaintiff's only remedy to correct the alleged error wäs by direct appeal from the Nevada judgment through the Nevada courts and, if necessary, to the Supreme Court of the United States. (See *Morris* v. *Jones,* 329 U. S. 545, 552; *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66, 77; *Roche* v. *McDonald,* 275 U. S. 449, 455; *Fauntleroy* v. *Lum,* 210 U. S. 230, 237; see, also, *Estin* v. *Estin, supra,* 296 N. Y. 308, 312, affd. 334 U. S. 541; Restatement, Judgments, § 42, Comment a, p. 165.)

The question, however, remains whether the Nevada decree also effectively ended the obligation of support imposed upon the husband by the earlier New York judgment of separation.

In both *Estin* v. *Estin (supra,* 296 N. Y. 308) and *Kreiger* v. *Kreiger (supra,* 297 N. Y. 530), we held that a divorce decree granted in Nevada against a wife, not domiciled in that state, who was not served with process there and who did not appear in the action, was ineffectual to cancel the alimony provision of a prior New York judgment of separation.

Although the Nevada court had jurisdiction to grant the husband a decree of dissolution of the marriage, and its judgment was entitled to recognition to that extent, we held that, since it lacked jurisdiction of the person of the wife, it was without power to adjudicate upon, or interfere with, her right to alimony under the New York judgment. That was also the basis of the subsequent affirmance by the Supreme Court. (*Estin v. Estin, supra,* 334 U. S. 541; *Kreiger* v. *Kreiger, supra,* 334 U. S. 555; see, also, *Griffin* v. *Griffin,* 327 U. S. 220, 228–229.) In the *Estin* case, Chief Judge LOUGHRAN, writing for a unanimous court, analyzed the law on the subject in this way (296 N. Y., at pp. 312–313): " A divorce decree (whether foreign or domestic) granted by a court having jurisdiction of the persons of both parties may very well be held to override any incongruous alimony provision of an earlier domestic judgment of separation. (See *Scheinwald* v. *Scheinwald,* 231 App. Div. 757; *Richards* v. *Richards,* 87 Misc. 134, affd. 167 App. Div. 922; *Holmes* v. *Holmes,* 155 F. 2d 737.) But the *res judicata* principle of the cases just cited — that as between two conflicting adjudications the last must control — has no application where, as in the present case, the court which granted the last judgment was without jurisdiction of the person of the defendant (cf. *Miller* v. *Miller,* 200 Iowa 1193; *Wagster* v. *Wagster,* 193 Ark. 902; 2 Freeman on Judgments [5th ed.], § 629)."

In the present case, however, the Nevada court had jurisdiction of the wife's person by reason of her appearance and, consequently, it did have power to determine her right to alimony. If that tribunal had expressly passed upon the matter of alimony and had either denied an allowance to the wife or awarded her a sum less than that fixed in the New York judgment, there would be no doubt that the Nevada decree would be controlling over the inconsistent provision of the New York judgment. Since that would be the effect given in Nevada to such a judgment when rendered by a court having jurisdiction of the wife's person (see *Herrick* v. *Herrick,* 55 Nev. 59, 68; *Lagemann* v. *Lagemann,* 65 Nev. 373, rehearing denied 65 Nev. 385, appeal dismissed 336 U. S. 932; see, also, *Estin* v. *Estin, supra,* 334 U. S. 541, 547), the command of the full faith and

credit clause, as implemented by congressional legislation, would require us to give it like effect in this state. (U. S. Const., art. IV, § 1; U. S. Code, tit. 28, § 1738; see *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 438; see, also, *Scheinwald* v. *Scheinwald,* 231 App. Div. 757; *Burton* v. *Burton,* 150 App. Div. 790; *Davis* v. *Davis,* 114 F. 2d 492.)

Controlling effect must likewise be given to the Nevada decree in this case insofar as the matter of alimony is concerned, even though it makes no provision for alimony and even though the wife made no claim for any support in the action. Study of the few relevant Nevada decisions establishes the law of that state to be not only that a divorce decree overrides a prior support judgment or order (see *Herrick* v. *Herrick, supra,* 55 Nev. 59, 68), but that the question of alimony is one of the issues to be disposed of in the divorce action itself, and that, in the absence of an alimony award in the decree, or a reservation of jurisdiction, " there can be no grant of alimony after such a divorce ". (*Sweeney* v. *Sweeney,* 42 Nev. 431, 438.) In the latter respect, the Nevada law is in accord both with the law of this state (see *Hoops* v. *Hoops,* 292 N. Y. 428; *Kamp* v. *Kamp,* 59 N. Y. 212; see, also, *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304, 306) and with the general current of authority. (See 2 Freeman on Judgments [5th ed.], § 911, pp. 1915–1916.) The underlying rationale is that the divorce judgment breaks the marriage tie and thereby " cuts off and forbids in the future " any rights or obligations having their root in the marriage relation (*Matter of Ensign,* 103 N. Y. 284, 289); by that token, no right of support can survive except as awarded by the final decree of divorce or by an authorized amendment to such decree. (See *Hoops* v. *Hoops, supra,* 292 N. Y. 428; *Wilson* v. *Hinman,* 182 N. Y. 408, 411; *Livingston* v. *Livingston,* 173 N. Y. 377, 381.) In that view, it is immaterial that the wife made no claim for alimony in the divorce suit. (See *Howell* v. *Howell,* 104 Cal. 45; *Spain* v. *Spain,* 177 Iowa 249; *Herbert* v. *Herbert,* 221 Mo. App. 201; *Kelkenney* v. *Getsey,* 137 Neb. 416; *Weidman* v. *Weidman,* 57 Ohio St. 101.)

As long as the court in the divorce action had personal jurisdiction of both parties, its decree, as rendered or as subsequently modified, must be taken to determine the husband's obligation

of support, and the failure to grant alimony is properly treated as the equivalent of a denial of such relief. (See, e.g., *Holmes* v. *Holmes,* 155 F. 2d 737.) It follows, then, that the alimony provisions of a prior judgment of separation must yield to the overriding effect of the divorce decree. (See *Harris* v. *Harris,* 197 App. Div. 646; *Richards* v. *Richards,* 87 Misc. 134, affd. 167 App. Div. 922; *Gibson* v. *Gibson,* 81 Misc. 508; *Cohen* v. *Cohen,* 319 Mass. 31.)

In the light of reason and authority, therefore, we deem it clear that the recitals in the Nevada decision and decree that the wife sought no alimony do not serve to keep alive the New York alimony judgment. Those recitals may perhaps serve as a basis for concluding that the Nevada court impliedly reserved jurisdiction to adjudicate upon the question of alimony at a future time. In that event, the Nevada court would be empowered to amend its decree, so as to provide for payment of alimony, at any time after its rendition, without regard to the usual limitations period prescribed by the rules of that court (Rules of Nevada District Court, rule XLV) for securing amendments or modifications of its judgments or orders. (See *Aseltine* v. *Second Judicial Dist. Ct.,* 57 Nev. 269; *Schneider* v. *Second Judicial Dist. Ct.,* 64 Nev. 26.) However, whether jurisdiction has thus been reserved by implication, whether the wife should be given an allowance for support by way of modification of the divorce decree, are, of course, matters for the Nevada court alone to decide. (See *Schacht* v. *Schacht,* 295 N. Y. 439; *Hoyt* v. *Hoyt,* 265 App. Div. 223.) At any rate, a reservation of jurisdiction, if one there was, neither keeps alive the alimony provisions of the New York separation decree nor furnishes basis for inferring that the Nevada court intended to leave the matter of support for decision by the court of some other jurisdiction.

*Flood* v. *Thiesing* (273 App. Div. 548, affd. 298 N. Y. 700), upon which reliance is placed, neither states nor suggests any contrary rule or conclusion; it is enough to note — though other grounds of distinction are present — that that case involved a separation agreement, which, it is settled, may survive divorce. (See *Goldman* v. *Goldman,* 282 N. Y. 296, 305; *Galusha* v. *Galusha,* 116 N. Y. 635, 138 N. Y. 272; *Van Horn* v. *Van Horn,* 196 App. Div. 472.)

We consider, finally, whether defendant is estopped from denying the subsistence of the New York alimony judgment.

An estoppel, it has been said, '' rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.'' (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292.) The Appellate Division held defendant estopped because his continued payments of alimony caused plaintiff to change her position to her injury, by inducing her not to apply to the Nevada court — within the time allegedly allowed by that court's rules — for a modification so as to include a provision for alimony. It is dubious whether plaintiff could, under any circumstances, '' rightfully '' rely upon the continued payments as an interpretation of the Nevada decree by defendant. But, quite apart from that, there is no evidence that plaintiff was either misled by such conduct of defendant or that she relied upon it, and, as a matter of fact, plaintiff made no such claim of reliance in the courts below. Manifestly, an essential element of estoppel was lacking. (See *Byrne* v. *Barrett,* 268 N. Y. 199, 208; *Wills* v. *Investors Bankstocks Corp.,* 257 N. Y. 451, 458; *Metropolitan Life Ins. Co.* v. *Childs Co., supra,* 230 N. Y. 285, 292–293.) Plaintiff did, though, assert an estoppel upon the ground that defendant, in filing income tax returns, deducted the alimony payments made by him after the Nevada decree had been granted. Since such deductions are allowed only for payments made pursuant to a decree (Internal Revenue Code, § 22, subd. [k]; § 23, subd. [u]; U. S. Code, tit. 26; Tax Law, § 359, subd. 8; § 360, subd. 17), it is urged that defendant must be taken to have conclusively acknowledged the continued effectiveness of the New York alimony judgment. Here, too, however, is lacking any adequate showing that plaintiff was prejudiced by defendant's conduct. (See *Rothschild* v. *Title Guar. & Trust Co.,* 204 N. Y. 458, 464.) Her contention that injury stemmed from the fact that the payments deducted from defendant's income as alimony payments thereby became taxable as income to her will not stand analysis. In the first place, plaintiff was not concluded by defendant's characterization of the payments in his tax returns, and, in the second place, she cannot possibly complain if defendant made payments to her, which he was not obligated to make, either gratuitously or under a mistake of law.

That we reach a result in the case before us different from that in *Estin* v. *Estin* and *Kreiger* v. *Kreiger* merely because of the added circumstance that Mrs. Lynn chose to appear and participate in the proceedings in Nevada, may seem to some inequitable. The explanation, though, is clear and decisive. The additional factor present in this case operated to give the Nevada court jurisdiction of the wife's person and, by that token, vested that tribunal with power to adjudicate the wife's right of support as well as the parties' marital status. That being so, our conclusion is here compelled by the command of the full faith and credit clause, for, as the Supreme Court has recently declared (*Sherrer* v. *Sherrer, supra,* 334 U. S. 343, 355), " If in its application local policy must at times be required to give way, such ' is part of the price of our federal system.' *Williams* v. *North Carolina,* 317 U. S. 287, 302 ".

The order of the Appellate Division should be reversed, and that of Special Term affirmed, without costs. The first question certified should be answered in the negative and the second question, read as we interpret it (*supra,* p. 200), should also be answered in the negative.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Ordered accordingly.