■ ANN B. NEWBURGER, Appellant, v. ANDREW M. NEWBURGER, Respondent.— In an action by a wife for a judicial separation, in which the defendant husband asserted a counterclaim for annulment of the marriage on the ground that it was void from its inception by reason of the invalidity of the decree of divorce theretofore rendered in the State of Nevada in favor of the wife's first husband, the plaintiff wife appeals from so much of a judgment of the Supreme Court, Westchester County, entered October 31, 1960 upon the decision of the court after a nonjury trial, as declared the marriage between her and the defendant to be null and void. Judgment, insofar as appealed from, affirmed, without costs. No opinion. Ughetta, Acting P. J., Brennan, Hill and Rabin, JJ., concur; Hopkins, J., dissents and votes to reverse the judgment, to dismiss the counterclaim for annulment and to remit the action for trial of plaintiff's cause of action for separation, with the following memorandum: In October, 1955, plaintiff's first husband obtained a decree of divorce from her in the State of Nevada. Thereafter, on December 30, 1955, the plaintiff married the defendant; and in 1958 she commenced the present action against him for a separation. The defendant counter-claimed for an annulment of the marriage on the ground that the Nevada decree is void for lack of jurisdiction. As a separate defense to the counterclaim, plaintiff asserted that defendant was estopped from claiming such lack of jurisdiction or from attacking the validity of the divorce decree. By order of the court, the issues raised by the counterclaim were tried first separately. After such separate trial, the court concluded that the Nevada decree was not entitled to full faith and credit in this State. The conclusion was based on the trial court's findings: (1) that plaintiff's first husband had not established a bona fide residence in Nevada; (2) that she had not appeared in the Nevada action; and (3) that she had not been served with process in that State. Accordingly, the trial court held that no valid marriage subsisted between plaintiff and the defendant and that its annulment must be directed. I agree that the evidence adduced justified the trial court's determination that the Nevada court was without jurisdiction to render its divorce decree and that, therefore, plaintiff's first marriage had not validly ended. However, I disagree with the trial court's dismissal of the plaintiff's defense that the defendant is estopped from contesting the validity of such decree. In dismissing that defense, the trial court, albeit reluctantly, held it was bound by the rule that one who aids another to obtain a void decree of divorce from such other's former spouse is not thereafter estopped from asserting the invalidity of the marriage later contracted between him (the aider) and the one thus aided, on the ground that the divorce decree is void. In my opinion, under the circumstances here, such rule may not be invoked. The facts here are sufficient to raise an estoppel against the defendant and to bar him from succeeding upon his counterclaim. The plaintiff's testimony established that, after she had been served with out-of-State process in the Nevada divorce action brought by her first husband but before the rendition of the decree therein, the defendant: (1) told her to ignore the process so that the divorce would come through quickly; (2) promised her that he would adopt her son by the first marriage; (3) took her to two lawyers to discuss the alimony that she would lose as a result of the divorce; (4) proposed marriage to her, and (5) said that he desired to be married before the end of the year — some three or four months hence — because he could save $20,000 in income taxes through filing a joint return. Such testimony by the plaintiff was not contradicted by the defendant, nor controverted by any evidence produced by him. Hence, the plaintiff's testimony must be weighed most strongly in her favor (*Noce* v. *Kaufman*, 2 N Y 2d 347, 353; *Borman* v. *Phipps Estates,* 260 App. Div. 657). It may be fairly inferred, therefore, that the plaintiff's failure to appear in the Nevada action stemmed from the defendant's conduct. Had she appeared in the Nevada

action, the divorce decree would have been valid (*Sherrer* v. *Sherrer*, 334 U. S. 343; *Lynn* v. *Lynn*, 302 N. Y. 193; *La Barr* v. *La Barr*, 282 App. Div. 583). Hence, it was within the plaintiff's power to make the divorce effective against all parties and at the same time render herself free to marry the defendant. The defendant's inducements to the plaintiff not to take any steps in the pending Nevada action thus prevented the decree from becoming legally effective and led to his later defense of invalidity. This conduct on the part of the defendant is vastly more prejudicial and harmful than simply urging and financially aiding a wife to seek a foreign decree from her first husband (cf. *Landsman* v. *Landsman*, 302 N. Y. 45; *Gruttemeyer* v. *Gruttemeyer*, 285 App. Div. 1185). In such a situation the validity of the divorce depends on the co-operation of another party, i.e., the first husband; and he may choose not to submit to the jurisdiction of the foreign State. But here, the defendant's actions had a direct and essential relation to the jurisdictional defect in the divorce decree; he was instrumental in creating the defect; and he now seeks to turn it to his own advantage. The doctrine of equitable estoppel as a defense to an action for an annulment, though questioned (cf. *Packer* v. *Packer*, 6 A D 2d 464, 467), still has vitality, at least in those "extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere" (*Stokes* v. *Stokes*, 198 N. Y. 301, 312; cf. *Presbrey* v. *Presbrey*, 6 A D 2d 477, 482). The doctrine has been applied to prevent a husband from asserting that a Nevada decree apparently terminating his first marriage was void as against his second wife suing him for a separation (*Krause* v. *Krause*, 282 N. Y. 355); and it was similarly invoked to prevent a wife from asserting against her second husband the invalidity of her second marriage where she had married subsequent to the rendition of a void decree, terminating her first marriage (*Carbulon* v. *Carbulon*, 293 N. Y. 375; *Packer* v. *Packer*, 6 A D 2d 464, supra). In both of these instances the estoppel was invoked against a party to the marriage which was sought to be extinguished through the abortive foreign decree. But the force of the estoppel should not be diluted by the fortuity that the party seeking the annulment was one of the spouses in the first marriage. Equitable estoppel is designed to achieve fairness and to prevent fraud (3 Pomeroy, Equity Jurisprudence [5th ed.], pp. 179–184; cf. *Benintendi* v. *Benintendi*, 1 Misc 2d 474, affd. 273 App. Div. 969, affd. 298 N. Y. 848). Not the type of action involved, but the type of conduct involved, is the criterion governing its application. The stimulus for its use is conduct by one person inconsistent with a position later adopted by him which is prejudicial to the rights of another who relied on such prior conduct to his detriment (cf. *Lynn* v. *Lynn*, 302 N. Y. 193, 202, supra). It has been suggested that in the area of matrimonial actions three considerations have particular importance in the formation of an estoppel: (1) that the attack on the divorce is inconsistent with prior conduct of the attacking party; (2) that the party upholding the divorce has relied upon it, or has formed expectations based upon it; and (3) that such reliance or expectations will be upset if the divorce be held invalid (Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L. J. 45, 56–57). Here, it appears that all three considerations are present. In my opinion, the defendant's conduct, whereby, for reasons advantageous to him personally, he persuaded plaintiff to allow the divorce action against her to proceed to decree without her appearance or opposition, warrants the extension of the doctrine of estoppel so as to bar him from later penalizing the plaintiff for her failure to insulate herself from an attack against their marriage — a failure which his actions and representations induced. This does not mean that the marriage between the plaintiff and the defendant is judicially validated by the court. It means simply that as between

them the obligations assumed by the defendant toward the plaintiff will be observed and enforced, and that the defendant will not be allowed to profit from his own misconduct. (*Krause* v. *Krause*, 282 N. Y. 355, 359–360, *supra.*) For these reasons I favor the dismissal of the defendant's counterclaim for annulment and the remission of the action for trial of the plaintiff's cause of action for separation.