Fuld, J. (dissenting).
In no prior case has this court ever held that a separation agreement — or, more precisely, a decree predicated on the agreement which survives the decree—may be modified where such agreement was “ valid and adequate when made ” (opinion, p. 284) and, by reason thereof, “ is unassailable ” (opinion, p. 286). I had always thought it settled that a court lacked the power to modify a matrimonial judgment by changing the amount of alimony allowed therein if to do so would impair the rights of either party under a valid, nonmerged agreement. (See Galusha v. Galusha, 116 N. Y. 635; Goldman v. Goldman, 282 N. Y. 296; Schmelzel v. Schmelzel, 287 N. Y. 21.)
We did, it is true, in the Goldman case (282 N. Y. 296, supra), where the husband sought a reduction of the amount he was to pay, uphold the court’s power to modify the alimony provisions of the divorce decree despite the existence of a prior separation *290 agreement fixing the measure of support for the wife. But, in reaching that conclusion, this court made it exceedingly plain that the husband continued liable for the larger amount stipulated in the agreement he made with his wife and that, accordingly, the latter’s rights remained intact and unimpaired despite the modification of the decree. Thus, after noting that separation agreements, “ lawful when made, will be enforced like other agreements unless impeached or challenged for some cause recognized by law ’ ’, that it is ‘ not in the power of either party acting alone and against the will of the other to destroy or change the agreement ” (282 N. Y., at p. 300) and that “ [s]o long as the contract remains in force * * * the court could not * * * direct the [husband] to pay more or the plaintiff to accept less than the parties had agreed should be paid by the defendant for the support of [his wife] ” (p. 303), the court went on to say that‘ ‘ the direction of the court that the defendant shall pay to the plaintiff a sum less than he agreed to pay does not relieve the defendant of any contractual obligation. The direction of the court may be enforced in manner provided by statute and the plaintiff may still resort to the usual remedies for breach of a Contractual obligation if there has been such breach ” (p. 305).
In its opinion in the present case, the court recognizes that “ support agreements covered into divorce judgments are valid and binding until set aside for ab mitio invalidity” and that “ subsequent decree modifications leave the prior nonmerged support contract still in existence qua contract” (opinion, p. 285). If these propositions are correct—and undoubtedly they are — then, I would ask, how can the 1944 separation agreement before us, which was concededly valid when made, now be changed so as to impair the contract rights of the husband?
As I understand the majority’s argument, it is that, since the court possesses the power to modify the decree by reducing the amount of alimony previously agreed upon—as was held in Goldman (282 N. Y. 296, supra) and in Holahan v. Holahan (298 N. Y. 798)—the court has a like power to increase such amount. This, it seems to me, is a non sequitur. Quite obviously, if there is a reduction of alimony in the decree, the wife is still free to proceed against the husband in a contract action and thereby collect the larger amount provided for in the agreement. *291 In such a situation, it is quite evident that the modification does not effect an impairment of any contract right.
The situation, however, is manifestly different where the decree is sought to be amended to provide that the husband should pay a larger amount of alimony than he had agreed upon. By imposing the heavier obligation upon him, the requested modification would unquestionably impair the husband’s contract rights and, for that reason, this court has never sanctioned such a change. This is precisely what was held in Schmelzel v. Schmelzel (287 N. Y. 21, supra). We there concluded that, since the agreement was fair and adequate when executed, the court lacked the power to direct the husband to pay a sum in excess of that which he had agreed to pay. In other words, unlike a modification downward— in which instance no right of the wife was impaired since she was at liberty to proceed against her husband on the agreement—a modification upward effected a substantial change in the contract which the parties had made. “ As was pointed out in the Goldman case,” declared the court in Schmelzel (287 N. Y., at p. 26), “ only a mutual act of the parties based upon mutual intention, or some other cause recognized by law, could terminate this valid separation agreement. ‘ Such agreements, lawful when made, will be enforced like other agreements unless impeached or challenged for some cause recognized by law. It is not in the power of either party acting alone and against the will of the other to destroy or change the agreement.’ (Goldman v. Goldman, supra, p. 300; Galusha v. Galusha, 116 N. Y. 635; Galusha v. Galusha, 138 N. Y. 272.) ”
I recognize that, if the agreement were to relieve the husband of his obligation to support his wife, it would be void under old section 51 of the Domestic Relations Law (now General Obligations Law, § 5-311) and a court would, of course, be privileged to disregard it and modify the decree’s support provision, based as it was upon the invalid contract. For instance, if there was ‘ ‘ an agreement to pay, and a payment of, a lump sum to a wife in return for a release of the husband from all future liability for the wife’s support ”, the agreement would be subject to attack. (Jackson v. Jackson, 290 N. Y. 512, 516-517; see, also, Kyff v. Kyff, 286 N. Y. 71; Salmon v. Salmon, 261 N. Y. 646.) But the present is not such a case. Here, to paraphrase what was said in the Jackson case (290 N. Y., at p. 516), there was an agree *292 ment for regular, substantial and periodic payments to the wife, representing an admeasurement and a determination, in dollars, of the husband’s continuing obligation to support his wife. Concededly, that agreement, when entered into, was fair and adequate, for it was based upon and reflected the husband’s earnings and the scale of living of the parties at that time. And, this being so, “ the courts will treat their agreement, so long as it remains unrevoked, as the proper measure of compensation ’ ’ and may not modify the decree based on that agreement by requiring the defendant to pay more than had been agreed upon in the contract. (Jackson v. Jackson, 290 N. Y. 512, 516, supra.)
The court regards these principles as inapplicable to the case before us. The agreement, it is urged, is not controlling because the $100 a month which was there provided “ is [now] inadequate for her basic support ” and because the husband’s financial condition has greatly improved. The disproportion between her needs and his means — 20 years have passed since their absolute divorce — is glaring and, if she has redress under the law, there is no -question of her right to an increase within the limitations specified in the majority opinion. But the inequity of the situation is not something, I venture, which impinges on the validity of the agreement and renders it void. There is no question, as all agree, that, when it was made, the agreement was fair and adequate and, consequently, it follows that the court lacks the power to modify the decree by requiring the defendant to pay more than had been agreed upon in the contract.
Certainly, if the defendant’s means had not improved, the plaintiff would not be entitled to an increase, however unfortunate her circumstances. Nor would she be entitled to an increase, regardless of the improvement in the defendant’s income, if she were, in fact, able to get by with some measure of comfort on the stipulated allowance or had some other possible means of support. In either event, it is safe to assume that the court would have upheld the agreement as controlling and rejected the plaintiff’s application. What, then, is the qualitative factor which empowers the court to disregard the agreement as being no longer a binding contract? It would appear to be the concurrence of both factors — the plaintiff’s destitution and the defendant’s prosperity. These parties could easily have provided in their agreement for the contingency of a change in *293 circumstances. The fact that they did not do so reasonably signifies either a disinterest in such an arrangement or an unwillingness, on the part of either or both of the parties, to provide therefor. Whatever the reason, it is not for the court to rewrite their contract. (See, e.g., Stoddard v. Stoddard, 227 N. Y. 13, 17.)
As I have already observed, I am not aware of any authority for the conclusion reached by the court; a mere reading of the oases cited in its opinion reveals that they have little, if anything, to do with the question presented. For instance, in Severance v. Severance (260 N. Y. 432), the court struck the alimony provision from a judgment of divorce because of the wife’s remarriage — such action being mandated by statute ( Civ. Prac. Act, § 1159, now Domestic Relations Law, § 248)—though, in so doing, it left open the question whether the wife could proceed against the husband on the agreement. In Salmon v. Salmon (261 N. Y. 646, supra), a 19'21 agreement actually relieved the husband of his duty of support by providing for an initial lump sum payment (of $2,150) and for weekly payments of alimony— at first of $12.50 and then of $7.50—for only 12 years, explicitly specifying, as it did, that “ no further payments shall be required after July 11, 1933 thus, in short, the agreement provided for an ultimate cessation of all support. In Fox v. Fox (263 N. Y. 68) and Lynn v. Lynn (302 N. Y. 193), there was no agreement involved; indeed, the Lynn case dealt with the very different problem of a “divisible divorce ”. In Karlin v. Karlin (280 N. Y. 32), we approved a modification of the judgment ‘ ‘ nunc pro time as of the date it became final, so as to square it with what was then the obligation of the husband under the agreement made by the parties ” (p. 36). In Kyff v. Kyff (286 N. Y. 71, supra), we held that a lump sum settlement is no bar to alimony in a divorce suit, since the agreement, under the facts there disclosed, was invalid as a device to relieve the husband from his duty of support. In Jackson v. Jackson (290 N. Y. 512, supra) and Hettich v. Hettich (304 N. Y. 8), there was no question of a modification.
In sum, then, it is my view that, although a court has the statutory power to modify a decree, even though there is a separation agreement which survives the decree, the court may not exercise that power if, as in the case before us, to do so *294 would impair the rights of either party under their existing and valid agreement. I would, therefore, affirm the judgment appealed from.
Judges Dye, Burke, Scileppi and Bergan concur with Chief Judge Desmond; Judge Fuld dissents in an opinion in which Judge Van Voorhis concurs.
Order reversed, with costs in this court and in the Appellate Division, and matter remitted to that court for determination of the questions of fact.