Gabrielli, J.
Congress Factors Corporation (Congress) entered into a "discounting factoring agreement” on December 20, 1971 with Duobond Corporation (Duobond), a textile finishing business, whereby Congress agreed to purchase certain accounts receivable, on an approved list, and assumed responsibility for the debtor’s failure or inability to pay, reserving only the right to charge back any accounts which were disputed. Duobond, the assignor of the accounts receivable under the agreement, commenced this action to recover payment from the assignee, Congress, for accounts which Congress charged back to the assignor. The issue is whether there was a bona fide dispute over certain accounts which would give Congress the right under the terms of the factoring agreement to charge back to Duobond the accounts involved.
The factoring .contract provided, in pertinent part, that: "We [Congress] agree to purchase the account receivable arising from sales to purchasers whose credit we have approved provided the goods have been actually delivered to the purchaser and have been finally accepted without dispute. You [Duobond] agree to indemnify and protect us against all liability, loss or expense caused by or arising out of the rejection of goods and claims of every kind and nature by purchasers, other than loss or expense resulting from ñnancial inability of the purchaser to pay. It is understood that you will promptly adjust all disputes with purchasers and promptly advise us of same * * * and we shall have the right to charge the disputed account or accounts back to you before or after the maturity thereof * * * The charge back of any such accounts shall not be deemed a reassignment thereof, and title * * * shall remain in us until we shall have been fully reimbursed. We agree to reassign to you any such charged-back accounts upon your payment to us, in cash, of the amount or amounts credited by us to you”. (Emphasis added.)
Duobond had been doing business with Herman Zucker Textile Co., Inc. (Zucker), and its affiliates and pursuant to the above agreement, with proper credit approvals by Congress, the accounts arising out of such business were assigned to Congress. In early 1972 Duobond had completed finishing *179 work for Zucker on Style 271 fabric, the accounts were assigned to Congress and by April 26, 1972 they had been paid in full. At this point Congress was liable to Duobond for a percentage of the amount collected as set forth in the agreement and if there were dispute over the quality of the goods, Zucker’s only recourse was against Duobond. Once the account is paid the factor is no longer involved in any dispute that arises over the goods (see Iselin-Jefferson Fin. Co. v Makel Textiles, 21 AD2d 758; McMullen Leavens Co. v Van Buskirk Co., 275 App Div 701, affd 299 NY 784). Duobond, however, was unaware that the account relating to the Style 271 goods was paid, although Duobond’s account for these goods had been credited by Congress in the normal course of their arrangement.
Between April 1 and August 7, 1972 Duobond performed additional finishing work for an affiliate of Zucker, the bills being charged to Zucker on whose credit the business was handled. This work involved some 67 invoices totaling $15,459.24 which were assigned to Congress who in turn billed Zucker. Zucker failed and refused to pay on the ground that there was a dispute over the quality of work. On August 10 Congress sent Duobond a notice of dispute relating only to the 67 invoices, which stated that Zucker "claims that all bills are in dispute—that goods bled and are going to be tested by independent adjusters.” The notice also contained the following printed statement: "Please note that all items in dispute must be adjusted by you with the customer within 30 days. If unresolved this item(s) will be charged to your account.”
In fact the dispute did not arise over the items covered by the 67 invoices but over the Style 271 fabric which had been previously factored and paid. Congress was unaware that the dispute did not involve the items covered by the 67 invoices and failed to properly identify the disputed items with any open account it was holding. In any event Congress made several unsuccessful attempts to collect from Zucker. Likewise, during August and September Duobond wrote to Zucker informing him that in their opinion the bleeding which occurred during cleaning was not the fault of Duobond but was caused by defective dye. Finally, Duobond sent Zucker a report prepared by Dow Chemical Company which confirmed its assertion that the defect was in the dye and no basis for a dispute existed between Duobond and Zucker.
Zucker still refused to pay and on October 31 Congress *180 charged back to Duobond the sums it had advanced on the 67 invoices. Congress did not know and concededly did not investigate to learn that the dispute was not over the 67 invoices. Requests by Duobond that Congress sue Zucker were refused on the ground that under the agreement the factor was not responsible for disputed accounts. Not wishing to abandon its right to payment and realizing that Congress refused to pursue the matter, Duobond sought and received a reassignment of the 67 invoices for the sole purpose of instituting suit against Zucker. During the course of this suit, Duobond discovered that the Style 271 account had been paid by Zucker and credited to Duobond’s account by Congress, and that there was no dispute over the items covered by the 67 invoices, which were in all respects satisfactory. Consequently Duobond was granted summary judgment against Zucker, but on the day before judgment was entered, Zucker filed in bankruptcy. After collecting 10% of its claim in bankruptcy, Duobond instituted this action against Congress on the ground that the charge-back was improper.
The discounting factoring agreement provided that Congress "shall have the right to charge the disputed account or accounts back” to Duobond (emphasis added). Under this language the right to charge back arises only on an account which is disputed. There was no "dispute” over the 67 invoices and yet those were the accounts charged back. This action by Congress was clearly in violation of the contract because no basis whatsoever for a charge-back on the 67 invoices existed. The fact that both Congress and Duobond did not fully understand the circumstances surrounding the dispute is of no consequence. The decisive issue is ^whether Congress was entitled to charge back the accounts on the 67 items and under no interpretation of the contract did it obtain this right. Under the agreement Congress had the legal right to collect the accounts assigned to them and, absent a dispute on a particular account, it could not arbitrarily charge back the amount due.
We are not faced with a case where several accounts of a single buyer are outstanding and one such account is disputed. We need not decide under those circumstances what method of charge-back would be proper. Nor are we faced with a case where the dispute is arbitrary and frivolous and yet a charge-back may still be proper (see Mountain Top Mfg. Co. v Business Factors Corp., 39 Misc 2d 408). This case involves a *181 dispute between Duobond and Zucker which relates in no way to any outstanding account held by Congress, other than by similarity of parties. Thus, the charge-back was improper.
By the terms of the agreement Congress assumed liability for "loss or expense resulting from financial inability of the purchaser to pay”. After Congress refused to pursue the matter, Duobond successfully brought suit for payment of the debt but collection on the judgment was frustrated by the intervening bankruptcy of Zucker. This situation was the very type contemplated by the agreement which undeniably places liability for the loss on Congress.
Furthermore, Duobond should not be prejudiced by its attempts to collect the debt after Congress improperly charged back the account. The reassignment of the accounts and the eventual law suit are insufficient to support a defense of waiver or estoppel. Duobond never intentionally abandoned a known right (Alsens Amer. Portland Cement Works v Degnon Contr. Co., 222 NY 34), nor was there any reliance by Congress on the words or deeds of Duobond which resulted in prejudice to it (see Lynn v Lynn, 302 NY 193; Metropolitan Life Ins. Co. v Childs Co., 230 NY 285). The claims of waiver and estoppel are without merit.
The judgment of the Supreme Court should be affirmed, with costs.