ARMSTRONG, APPELLEE, *v*, ARMSTRONG, APPELLANT; GENERAL MOTORS CORPORATION ET AL., APPELLEES.

(No. 7826—Decided March 8, 1954.)

*Mr. Walter K. Sibbald,* for appellee.
*Messrs. Gorman, Silversteen & Davis,* for appellant.

MATTHEWS, P. J.   The defendant Raymond C. Armstrong, in this appeal, challenges the validity of a judgment for alimony rendered in favor of the plaintiff.   The plaintiff, by her cross-appeal, challenges the validity of the court's judgment denying a divorce to her.

The trial took place on the plaintiff's amended petition and the defendant's answer.

In the amended petition, the plaintiff alleged that the defendant had been guilty of gross neglect of duty and extreme cruelty which forced her to separate from him in October 1950, and that in April 1951 he filed an action in the Circuit Court of the Eleventh Judicial District in and for Dade County, Florida, in which action he falsely charged that she was wholly without business training at and prior to their marriage; that during all their married life of 34 years she had never shared in any business activities with him; that she had contributed nothing to the enhancement of his material assets; that she had an ungovernable temper and had shot at him with a revolver; that as early as 1943 she began to plan leaving him; that she had wrongfully induced him to place bank accounts and safe deposit boxes in their joint names for the purpose of thereafter taking them into her exclusive possession and did on their separation on a later date take certain amounts of money and bonds and stocks into her exclusive possession and sought to convert them to her own use; that, upon a reconciliation in 1948, she had promised to return the money and other property to him, but

had not done so, with the exception of about $7,000 which she returned to their joint bank account; that the reconciliation failed wholly because of her wrongdoing; and that in October 1950 she left their residence in Miami, Florida, and refused to disclose where she was living thereafter.

She alleged also that the defendant Armstrong made oath to the foregoing allegations knowing them to be false and that the prosecution of the action based thereon would perpetrate a fraud upon the court, and that nevertheless he appeared before a special master in said cause and testified falsely as aforesaid, and the special master reported to the court that he was entitled to a divorce after an agreement had been reached between the defendant Armstrong and the special master setting the amount of the special master's fee.

The plaintiff alleged also that, without service of summons upon her and without her appearance therein, the action came on for hearing upon the complaint of the plaintiff (defendant Armstrong herein) and the report of the special master, and that thereupon the court entered a decree on October 2, 1951, granting a divorce to Armstrong, the defendant herein.

In her amended petition, the plaintiff alleged that in 1914 she and the defendant Armstrong started a business in which she furnished the greater part of the capital, which business was continued through their joint efforts before and after their marriage, resulting in the accumulation of property in their ownership, a part of which consisted of certificates of stock, specifically described, in six corporations issued in the name of defendant Armstrong, which certificates the plaintiff has in her possession in Hamilton County, Ohio, but which are unendorsed by the defendant Armstrong. She alleged also that the defendant corporations which issued the certificates will not cancel them and reissue them without the order of a court and, for that reason, they are made parties, so that the court may award to her such alimony as the court may deem reasonable and proper. Her prayer was for divorce and alimony.

The defendant Armstrong by answer denied that the allegations in his complaint and the testimony he gave in his action in the Eleventh Judicial Circuit in and for Dade County,

Florida, were false; denied that defendant therein was not served with summons; and alleged to the contrary that the defendant was duly served in accordance with the law of Florida, and that, by reason thereof, the Florida court had full jurisdiction over both the subject matter and the persons of the plaintiff and defendants.

The defendant Armstrong denied that he had been guilty of gross neglect of duty or extreme cruelty; denied that plaintiff had been a dutiful and faithful wife; denied that she had assisted in any way in the accumulation of property; but asserted that such property was accumulated by his own efforts; that much of the property had been placed in their joint names solely because of the plaintiff's insistence; and that in various ways from such properties in their joint names she has received and will receive substantial sums. He alleged also that the withdrawal by the plaintiff of his property from the safety deposit box constituted embezzlement under the laws of Florida, of which laws he asked the court to take judicial notice.

The defendant's answer contained a general denial of all plaintiff's amended petition of good conduct on her part and misconduct on his part and concluded with a prayer that her amended petition be dismissed and that she be required to deliver to him all the certificates of stock and jewelry in her possession, and that the court make an equitable division of the money withdrawn from their joint bank accounts.

A reply placed in issue all the affirmative allegations of the answer.

At the trial of these issues, evidence was introduced from which the conclusion could reasonably be deduced that the plaintiff in this action had been guilty of gross neglect of duty and extreme cruelty and that the Florida decree granting a divorce to the defendant herein was supported by sufficient evidence. On the other hand, evidence of equal cogency was introduced from which it could be deduced that he had been guilty of gross neglect of duty and extreme cruelty, and that the decree awarding a decree to the plaintiff herein outweighed the evidence of the defendant and would have justified a divorce in her favor. At any rate, this court would not be justified in reversing

the decree in her favor on the ground that it was manifestly against the weight.

The complete record of the action in which the divorce was granted to the defendant herein by the Florida court was introduced at the trial in this case. This record includes the bill of complaint, the amendment to the bill, a complete transcript of the testimony taken before the special master, the special master's report, and the final decree. From this record, it is manifest that the plaintiff in that case sought to vest the court with jurisdiction not only over the marital status, so that it might be dissolved, but also endeavored to bring all the property and property rights, both real and personal, wherever located, within the court's jurisdiction. The decree that was entered was equally broad. By it, the plaintiff in that action (Raymond C. Armstrong) was granted a divorce on the ground of gross neglect of duty and extreme cruelty and was awarded title to all the real estate and personal property within the territorial jurisdiction of the court. The defendant (Mary R. Armstrong) was found to have forfeited all right to alimony, was ordered to return all property she had taken from the bank accounts and safety deposit vaults, and was enjoined from interfering with plaintiff's right to such property. The court recited that it took notice that some property was located in Ohio, and, for that reason, the Ohio courts would determine the rights in such property. In view of that situation, the court made a specific finding that both parties were and had been for many years citizens and residents of the state of Florida, that the matrimonial domicile was in the state of Florida, that the plaintiff herein left the matrimonial domicile without right in 1950 and had no right to establish a legal domicile elsewhere, and that in law and fact her domicile was still that of her husband in the state of Florida.

The record shows—and it is admitted—that this decree was entered upon constructive service alone. The defendant was not served with any process within the territorial jurisdiction of the court, and she did not enter her appearance in any way. The decree was entered *pro confesso* on her failure to appear or answer.

In the decree in the case at bar, the court expressly stated that it gave full faith and credit to the decree of divorce of the Florida court, and, for that reason alone, denied to the plaintiff a divorce to which she would otherwise have been entitled. The court then found that the plaintiff was entitled to alimony, as prayed for, and awarded to her all the money and bonds taken by her from their joint accounts and vaults, all the jewelry, and 1,250 shares of stock in General Motors Corporation. It would appear that the court divided their property in equal shares between them.

It is manifest that the attack upon the judgment here under review results from divergent views as to the force and effect of the judgment of the Florida court under Section 1, Article IV of the Constitution of the United States, commonly referred to as the ''Full Faith and Credit Clause,'' which requires each state to give full faith and credit to the public acts, records, and judicial proceeding of every other state. The plaintiff's contentions are that the Florida decree was obtained by fraud and perjury, which rendered it voidable by a decree of a court of chancery, and, that, therefore, it is equally vulnerable in an Ohio court of general jurisdiction; and the Florida decree, after giving it all the force and effect accorded to it by the law of that state, is no bar to a judgment awarding her a divorce in this action. In the next place, she contends that even assuming that the divorce decree dissolved the marriage tie and is invulnerable to attack in this action it is, nevertheless, no bar to her action for alimony.

On the other hand, the defendant contends that as the divorce was granted to him by a court of the matrimonial domicile, from which domicile the plaintiff had departed in violation of her marital duties, as found by that court, the decree completely and finally dissolved the marriage ties, including also all the rights and duties of the parties incident thereto, and that the decree entered by the Florida court expressly so provided by barring the plaintiff of all such rights.

In support of her position that the Florida divorce is no bar to the plaintiff's action for divorce, plaintiff's counsel relies upon certain Florida cases indicating that a decree of divorce

by a Florida court obtained by fraud may be vacated, perhaps by the court granting it, by invoking the common-law writ of *coram nobis* or some statutory variation of that writ, or by an independent suit in chancery. It is not suggested that any such proceeding has been instituted. In our opinion, the mere existence of such a remedy does not deprive the divorce decree of that quality of finality, entitling it to full faith and credit by the courts of other states, enjoined by the Constitution of the United States. Even the fact that this judgment might be subject to an appeal or that the time for filing a motion to vacate or for a new trial had not expired would not affect its finality or deprive it of the right to full faith and credit. 31 American Jurisprudence, 167, Section 558. The judgment of the Florida court is, nevertheless, a final decree for divorce within the jurisdiction of the court granting it, to which full faith and credit must be given so long as it remains unreversed, unmodified, and not vacated by the courts of the state in which it was awarded. It should be noted that the trial court made no express finding that the Florida decree had been obtained through fraud and deceit.

We, therefore, hold that the trial court did not err in refusing to enter a decree of divorce for the plaintiff.

The question remains as to the effect of this Florida judgment upon the right of the plaintiff to a decree awarding her alimony. The Florida court not only assumed to grant a divorce but also to enter a decree barring the plaintiff from all rights based on the marital relation. And, as already noted, this was done without personal service or an entry of appearance in the action by the defendant. We are of the opinion that this attempt to deprive the defendant of a right to alimony could add nothing to the jurisdiction of the court. It is an attempt to render a personal judgment upon constructive service. Unless the dissolution of the marriage tie had the effect of destroying all rights incident to the marriage relation, express recitals certainly would not accomplish that effect. The detailed findings, that the plaintiff in this action had been, and was, a recreant wife and of no help, but a hindrance, to the plaintiff in the accumulation of his wealth, made by the Florida court to serve

as a predicate for the mandatory and prohibitory injunctions expressly made enforceable by contempt proceedings which were decreed, can have no greater validity than the writs by which they were enforceable. As no court has jurisdiction to enjoin and punish for contempt in the absence of personal service upon the person enjoined, this decree so far as it attempted to exercise such jurisdiction is null and void.

But defendant's counsel contend that this Florida decree, shorn of all provisions relating to alimony, is a bar to the plaintiff's claim for alimony. They assert that a decree for divorce granted on constructive service by a court of the matrimonial domicile has that effect. It is said that it has been so decided in *Atherton* v. *Atherton*, 181 U. S., 155, 45 L. Ed., 794, 21 S. Ct., 544, and *Thompson* v. *Thompson*, 226 U. S., 551, 57 L. Ed., 347, 33 S. Ct., 129, and that the latter case was cited with approval in *Estin* v. *Estin*, 334 U. S., 541, at 547, 92 L. Ed., 1561, 68 S. Ct., 1213, 1 A. L. R. (2d), 1412. While attempts have been made to distinguish and limit the effect of the cases of *Atherton* v. *Atherton, supra,* and *Thompson* v. *Thompson, supra,* we are of the opinion that they support the proposition for which they are cited. But we are also of the opinion that it is more accurate to say that *Thompson* v. *Thompson, supra,* was distinguished rather than approved in *Estin* v. *Estin, supra*.

To give to the court of the matrimonial domicile jurisdiction greater than that acquired elsewhere by one spouse, it was necessary to invoke the common-law fiction that the wife's identity was merged in that of her husband and that the domicile of his choosing was her domicile. Relaxing this rule, as was done in some cases, so as to permit the wife to change her residence so as to confer jurisdiction elsewhere of her divorce action would permit the husband, remaining at the "matrimonial" domicile, to compel her to return to that jurisdiction to defend her conduct in leaving, or allow a default; and if that jurisdiction determined that her leaving was unjustified, it could proceed to bind her by a personal judgment. This monolithic conception of the relation between husband and wife has long since ceased to be valid. By statutes and court decisions, the relation has been so altered as to give the wife almost as

much freedom of action as that of the husband. In Ohio and in most other states, for the purpose of jurisdiction to entertain her action for divorce and alimony, her right is not affected by the residence of her husband. Section 3105.04, Revised Code. This development of the law, without doubt, influenced the Supreme Court in cases subsequent to *Thompson* v. *Thompson, supra,* to review the subject of matrimonial domicile in its relation to the "Full Faith and Credit Clause" of the United States Constitution and to conclude that there was no distinction in that regard between matrimonial domicile and domicile acquired by either husband or wife acting separately.

This trend became manifest with the first case of *Williams* v. *North Carolina,* 317 U. S., 287, 87 L. Ed., 279, 63 S. Ct., 207, 143 A. L. R., 1273, in which the court said at page 301, that: "Moreover, so far as state power is concerned, no distinction between matrimonial domicil and a domicil later acquired has been suggested or is apparent." That the statement was made after due deliberation is manifest from the statement of the court in the second case of *Williams* v. *North Carolina,* 325 U. S., 226, 89 L. Ed., 1577, 65 S. Ct., 1092, 157 A. L. R., 1366, at 230: "In view of *Williams* v. *North Carolina, supra,* the jurisdictional requirement of domicil is freed from confusing refinements about 'matrimonial domicil.' "

And in the more recent case of *May* v. *Anderson,* 345 U. S., 528, 97 L. Ed., 1221, 73 S. Ct., 840, an action originating in Ohio seeking custody of children, the court reviewed and reversed the judgment of the Ohio court giving binding effect against the wife to a judgment rendered, upon constructive service only, by a Wisconsin court, which state was the matrimonial domicile of the husband. At page 533 the Supreme Court of the United States said:

"In *Estin* v. *Estin, supra,* and *Kreiger* v. *Kreiger, supra,* this court upheld the validity of a Nevada divorce obtained *ex parte* by a husband, resident in Nevada, insofar as it dissolved the bonds of matrimony. At the same time, we held Nevada powerless to cut off, in that proceeding, a spouse's right to financial support under the prior decree of another state. In the instant case we recognize that a mother's right to custody

of her children is a personal right entitled to at least as much protection as her right to alimony.''

From this it would seem that the Supreme Court of the United States regarded it as settled in that court that an *ex parte* decree is effective to dissolve the marriage tie, and that to that extent other states must accord to it full faith and credit. Beyond that, the power of the court to adjudicate property and personal rights is dependent upon seizure of property, or personal service of summons within the territorial jurisdiction of the court.

Certainly the Ohio courts understand that this is the doctrine of *Williams* v. *North Carolina, supra,* as is made manifest by the case of *Slapp* v. *Slapp,* 143 Ohio St., 105, 54 N. E., (2d), 153. In that case, it appeared that the husband had obtained an *ex parte* decree of divorce in Nevada while an action for alimony was pending in Ohio, the state of their last residence before separation. After the divorce was granted, the wife filed an amended petition adding a cause of action for divorce to her action for alimony. The trial court found that the Nevada divorce was null and void, and, thereupon, granted both divorce and alimony to the wife. On appeal by both parties, the Court of Appeals ''gave full faith and credit'' to the decree of divorce in Nevada, and reversed that part of the judgment of the Common Pleas Court which awarded a divorce to the plaintiff Ruth E. Slapp. On the other hand, the Court of Appeals affirmed that part of the judgment of the Common Pleas Court which awarded an equal division of the property to the plaintiff. The Supreme Court affirmed the judgment of the Court of Appeals.

It is true that the divorce decree under consideration in *Slapp* v. *Slapp, supra,* was not granted at the domiciliary residence. It is also true that in *Anderson* v. *May, supra,* the Ohio courts gave full faith and credit to a divorce decree of the domiciliary residence awarding custody of children, but they did so not because the decree was at the plaintiff's domicile, but because they decided that the children were technically present within that jurisdiction, and, for that reason, within the power of the court. And, as already pointed out, the Supreme Court of the United States expressly declined to place its reversal on

any disagreement with the Ohio Courts on that point, preferring to place it on the fundamental proposition that the full faith and credit required of other states by Section 1, Article IV of the United States Constitution to an *ex parte* decree was limited to the dissolution of the marriage status and did not extend to an adjudication or destruction of personal and property rights incidental to the marriage relation.

We, therefore, conclude that the Court of Common Pleas did not err in its holding that the *ex parte* decree in the Florida case was not a bar to the plaintiff's action for alimony.

The court divided the property of these parties in substantially equal shares between them. We have examined the record as to the manner of its accumulation, the contribution of each of the parties thereto, and the facts and circumstances of their respective situations and needs. We find no error of the court in this regard.

We find no prejudicial error in the record,

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross and HILDEBRANT, JJ., concur.