## ARMSTRONG, Petitioner, v. ARMSTRONG, GENERAL MOTORS CORPORATION et.

United States Supreme Court.

No. 38. Decided April 9, 1956.

Robert N. Gorman, Cincinnati, for petitioner.
Walter K. Sibbald, Cincinnati, for respondent.

## OPINION

By MINTON, J.

The petitioner, while residing in Dade County, Florida, filed a suit for divorce from his wife, who had separated from him and gone to Ohio, where she had established her residence. The wife was not personally served, nor did she appear in person or by attorney in the Florida suit. Service on her was constructive only. A divorce decree was granted petitioner by the Florida court, and he contends that that court also denied alimony to the respondent.

Later, the respondent wife instituted a suit in Ohio for divorce and for alimony. The petitioner appeared and set up the divorce obtained in Florida. The Ohio court found that the respondent had established grounds for divorce in Ohio but denied the divorce because Florida had already decreed a divorce to the petitioner. The Ohio court proceeded to pass on the question of alimony and granted the wife alimony, taking into account the total property owned by the petitioner. The petitioner appealed to the Court of Appeals, 99 **Oh Ap** 7, 58 **O. O.** 79, 130 N. E. (2d), 710, and then to the Supreme Court of Ohio, which affirmed the judgments of the lower courts. 162 **Oh St** 406, 55 **O. O.** 234, 123 N. E. (2d), 267. Petitioner argued and contends here that the Ohio courts have denied full faith and credit to the Florida decree. We granted certiorari. 349 U. S., 915, 75 S. Ct., 604, 99 L. Ed., 1248.

The sole question presented by the petition for certiorari was whether the Ohio courts were required to give full faith and credit to the **ex parte** Florida divorce decree, which petitioner alleges not only granted him a divorce, but also decreed that the wife was not entitled to alimony. As we interpret the Florida decree, however, the Florida court did not purport to adjudicate the absent wife's right to alimony. The Ohio courts, therefore, in awarding alimony to the wife, did not in fact fail to give full faith and credit to the Florida decree. Accordingly, we do not reach the constitutional question sought to be presented. But even if there is doubt as to the meaning of the Florida decree, we should construe its action as a refusal to pass on the question of alimony and thus avoid the constitutional question as to its power to do so.

The Florida court found that Mrs. Armstrong "has not come into this court in good faith or made any claim to the equitable conscience of the court and has made no showing of any need on her part for alimony. It is therefore, specifically decreed that no award of alimony be made to the defendant * * *." Taken literally, that language means only that, for the reasons it gave, the court would refrain from making an affirmative award of alimony to the wife, not that it adjudicated in favor of the husband that his wife was not entitled to alimony. The husband's bill of complaint did not ask for greater relief. It offered to show that Mrs. Armstrong's interest in jointly held property was "ample to support the defendant and that she has no further need of alimony." The purpose of this offer, however, was revealed by the next sentence of the complaint: "Nevertheless the plaintiff hereby offers to do equity and to abide by such orders or decrees, with reference to the settlement of the property affairs, as to this court may be deemed equitable." Thus the husband did not seek a decree holding the wife not entitled to alimony but rather merely submitted to the court's jurisdiction to condition its grant of divorce upon an award of alimony to his wife. The prayer for relief was fully satisfied by the decision that protection of the absent wife did not require the court to fix alimony before granting the divorce.

The Florida master's report is confirmatory of the limited scope of the decree. The master stated that "the question of the wife's alimony, if any, cannot be determined at this stage of the proceeding," pointing out that most of the marital property was in the wife's possession in Ohio and was the subject matter of litigation pending there. He accord-

ingly found that "the defendant is not entitled to receive alimony * * * under the facts and circumstances presented in the case" and recommended "that no award of alimony be made." The master's recommendation meant no more than that the question of alimony should not be decided because the wife had in her possession property adequate to meet her immediate needs, and the unresolved litigation made it impossible to determine her future needs. Presumably, the court's decree meant no more when it adopted in terms the master's recommendation that "no award of alimony be made." Like the master's report, the decree expressly recognized that the parties' property rights depended upon the outcome of the pending litigation in Ohio and that the wife had not shown any need for alimony.

When the Florida court said, "it is, therefore, specifically decreed that no award of alimony be made to the defendant," it recognized that no issue of alimony should be decided by it. The court simply said that no award of alimony be made—a purely negative assertion that it would not pass on the question.

It is true that the decree "that no award of alimony be made" was followed in the same sentence by a declaration, based on the court's and master's view of Florida property law, quieting title in the husband to certain Florida real property. At most, however, the fact that both matters were dealt with in a single sentence suggests only that the court might have reserved alimony out of that specific property had it concluded that such action was necessary to protect the wife's interest. That it did not do so is consistent with our conclusion that the Florida court did no more than refrain from awarding alimony at that time.

There was a valid decree in Florida dissolving the bonds of matrimony. There was no decree as to alimony. Ohio had personal service on both parties in a suit for divorce and alimony brought there by Mrs. Armstrong. The court denied her a decree of divorce because Florida had already dissolved the bonds of matrimony. The Ohio court found that, but for the decree in Florida, Mrs. Armstrong had established grounds for divorce in the Ohio suit. It considered that the matter before it was not a division of property, but an application for alimony, and it proceeded to hear evidence on that basis and finally entered a personal judgment against the defendant husband for alimony. The Ohio court, which had complete jurisdiction of both parties and the cause of action, entered a decree as to alimony only, which decree seems clearly authorized by the Ohio cases. Slapp v. Slapp, 143 Oh St 105, 28 O. O. 47, 54 N. E. (2d), 153; Cox v. Cox, 19 Oh St 502. The Florida judgment was given full faith and credit by Ohio as far as the judgment in Florida went, and no other questions are presented here.

Judgment affirmed.

## CONCURRING OPINION

By FRANKFURTER, J.

It is, of course, desirable to have a Court opinion, if one can be achieved without straining one's conscience. I am sufficiently in agreement with Mr. Justice Minton's construction of the Florida decree to be able to join him.

On my study of the record, I would dismiss the writ as improvidently granted. And for these reasons. After a case has been heard on the merits, it is to be disposed of on the precise issue that full study of the case discloses, and not on the basis of the preliminary examination of the questions that were urged in the petition for certiorari. Due regard for the working of the certiorari system requires this. In view of the fact that about 1,300 applications were made last term for leave to be heard (and this is a fair average of the volume of the Court's business), determination during this sifting process of the jurisdictional merits in all these 1,300 cases can hardly be expected. Theory and practice alike reject any such notion. The inevitably cursory consideration that is normally given in a case on the preliminary round precludes the assumption that a tentative finding of a federal question will survive the thorough study of the record which consideration of a case on the merits implies. Therefore, it is that cases have again and again been dismissed for want of jurisdiction, i. e., a substantial federal question was found wanting; on the contrary, it became clear that the state court judgment rested on an adequate state ground.

The petition for writ of certiorari in this case vigorously argued that "The sole question is whether the courts of Ohio, under Article IV of the Constitution of the United States, are compelled to give full faith and credit to the **entire** decree, granting a divorce, and denying alimony, rendered by the court in Florida, the matrimonial domicile of the parties, following the decision of Thompson v. Thompson, 226 U. S., 551 [33 S. Ct., 129, 57 L. Ed., 347]."

The references to the Florida decree in the opinion of the Ohio Supreme Court—the two documents are hardly to be deemed conspicuously lucid—warranted, without more, a belief that the case did present the question formulated by petitioner. Such a question would, no doubt, raise an important problems in the construction of the Full Faith and Credit Clause.

But the course of the oral argument, for such is one of its functions, and an exacting scrutiny of the record, for such is the requirement of plenary consideration of a case, put in a very different light the decree of the Florida court and thereby the significance of the litigation in Ohio.

A study of the Florida decree, a portion of which is set out in the margin,[1] in conjunction with Florida case law[2] demonstrates, I believe,

---

1. "This court takes recognition of the fact that litigation is now pending in the state of Ohio relative to the recovery of * * * stocks and bonds as well as the settlement of other matters concerning property rights between the parties. This court recognizes that the courts of Ohio will have the ultimate determination of the question of property rights where the property itself is in the state of Ohio * * *."

2. Compare Burkhart v. Circuit Court of Eleventh Judicial Circuit, 146 Fla., 457, 1 So. (2d), 872, and Lucian v. Southern Ohio Savings Bank & Trust Co., 156 Fla., 370, 23 So. (2d), 674, with Pawley v. Pawley (Fla.), 46 So. (2d), 464, 28 A. L. R. (2d), 1358, and Sorrells v. Sorrells (Fla.), 82 So. (2d), 684.

that Florida expressly disavowed any adjudication regarding claims to and in property situated in Ohio, the very properties which are the subject matter of the challenged Ohio decree. "The sole question" which the record of the case disclosed was that since Florida, by virtue of its decree, had made an adjudication foreclosing the creation of any interest, called by whatever name, in the property, that decree must constitutionally be respected by Ohio.

Thus, the sole question that survives is the power of Ohio, as a matter of its own policy, to define rights in property situated in Ohio in the circumstances of this case. A question of due process might be raised, though not successfully. Both the real property and securities. which had their locus in Ohio were subject to Ohio's control in that both items constituted "property within the state." Pennington v. Fourth National Bank, 243 U. S., 269, 271, 37 S. Ct., 282, 61 L. Ed., 713. In any event, it was not raised, and the claim under the Full Faith and Credit clause has evaporated, because Ohio merely dealt with property within its borders which Florida had not purported to affect.

Of course we have to go through all this reasoning to determine whether a substantial federal question was raised by reason of Ohio's disregard of Florida's decree. The Court not infrequently is required to find its way through a tangled or confused record in order to determine whether a state court judgment turned on a state ground or on a federal ground. In short, the Court has jurisdiction to decide whether it has jurisdiction. But when adequate analysis discloses that a state judgment amply rests on a state ground, we are barred from proceeding to the merits of the alleged federal question. The appropriate disposition is to dismiss the case for want of jurisdiction.

## CONCURRING OPINION

By BLACK, J.

The opinion of the Court takes the position that the Florida court did not adjudicate Mrs. Armstrong's right to alimony. We cannot agree. In the husband's Florida complaint he alleged that his wife's property was "ample to support the defendant and that she has no further need of alimony or property settlement." The Florida court expressly held that it had jurisdiction over both parties and over the subject matter of the complaint. It then proceeded to find that the wife was at fault in leaving her husband and the "matrimonial domicile." The court even suggested that Mrs. Armstrong was guilty of a criminal act in taking some of her husband's money and securities to Ohio. The decree continued: "This court, therefore, finds the defendant has not come into this court in good faith or made any claim to the equitable conscience of the court and has made no showing of any need on her part for alimony. It is, therefore, specifically decreed that no award of alimony be made to the defendant * * *." (Emphasis added.) This was plainly a denial of alimony, not on the ground that the court was leaving the

matter open but because the judge thought the wife should not have alimony.[1]

We agree with the majority that the Ohio decree was an alimony judgment and not a division of property. Thus in our view there is a direct conflict between that decree and the decree of the Florida court denying alimony to the wife. We therefore reach the constitutional question whether the Ohio court was justified in denying full faith and credit to the Florida decree.

We believe that Ohio was not compelled to give full faith and credit to the Florida decree denying alimony to Mrs. Armstrong. Our view is based on the absence of power in the Florida court to render a personal judgment against Mrs. Armstrong depriving her of all right to alimony although she was a nonresident of Florida, had not been personally served with process in that State, and had not appeared as a party. It has been the constitutional rule in this country at least since Pennoyer v. Neff, 95 U. S., 714, 24 L. Ed., 565, decided in 1878, that nonresidents cannot be subjected to personal judgments without such service or appearance. We held in Estin v. Estin, 334 U. S., 541, 68 S. Ct., 1213, 92 L. Ed., 1561, that an alimony judgment was this kind of "personal judgment." See also Kreiger v. Kreiger, 334 U. S., 555, 68 S. Ct., 1221, 92 L. Ed., 1572; Barber v. Barber, 21 How., 582, 588, 16 L. Ed., 226; Barrett v. Failing, 111 U. S., 523, 525, 4 S. Ct., 598, 599, 28 L. Ed., 505. The Estin case was much like this one. There, after the wife had obtained a separation and permanent alimony decree in New York, the husband went to Nevada and obtained a divorce. In accord with our previous holding in Williams v. State of North Carolina, 317 U. S., 287, 63 S. Ct., 207, 87 L. Ed., 279, we held that the Nevada divorce was valid and must be given full faith and credit by New York even though rendered without personal service on the wife. It was argued that New York also had to recognize Nevada's rule of law that the dissolution of a marriage put an end to a support order. We held, however, that Nevada could not adjudicate rights of the wife under the New York judgment because she had not been personally served with process and did not appear in the Nevada proceedings. 334 U. S., at 547–549, 68 S. Ct., at pages 1217–1218. The considerations supporting that holding are applicable here. The fact that Mrs. Estin's claim to support had been reduced to judgment prior to divorce while Mrs. Armstrong's had not is not a meaningful distinction. Mrs. Armstrong's right to support before judgment, like Mrs. Estin's right to support after judgment, is the kind of personal right which cannot be adjudicated without personal service. Cf., May v. Anderson, 345 U. S., 528, 73 S. Ct., 840, 97 L. Ed., 1221.

The husband here seeks to distinguish the Estin case on the ground

---

1. Mr. Justice Frankfurter's separate opinion takes the position that "Ohio merely dealt with property within its borders which Florida had not purported to affect." 76 S. Ct. 632 (60 O. O. 270). But the Florida decree stated that Mrs. Armstrong "is hereby directed and specifically ordered to return the said stock certificates and bonds to the plaintiff within fifteen (15) days * * *." These were the very stocks which the Ohio court ordered Mr. Armstrong to transfer to Mrs. Armstrong as alimony.

that there the husband left the "matrimonial domicile" and established a residence elsewhere, while here the husband kept his domicile in Florida and the wife fled from him. He argues, as the Florida court held, that it was impossible as a matter of law for Mrs. Armstrong to obtain a new domicile separate and apart from that of her husband. He bases this argument on the Florida court's finding on ex parte evidence that Florida, where the couple had resided during a considerable part of their marriage, was the "matrimonial domicile," and that the wife had left her home in Florida without cause. On this premise, the Florida court held that she "did not have the right to separate and claim a separate legal domicile and in truth and in fact, her domicile was that of her husband." The fiction that a woman cannot have a separate "domicile" from that of her husband is a relic of the old discredited idea that women must always play a subordinate role in society; it does not justify a departure from settled constitutional principles. The concept of "matrimonial domicile" was expressly repudiated in both the Williams cases.[2] Yet the Court is asked to say here that a State's power over an alimony case is to depend on which spouse is to blame in leaving the other. We adhere to what was said in the first Williams case: "the question as to where the fault lies has no relevancy to the existence of State power in such circumstances." 317 U. S., at page 300, 63 S. Ct., at page 214.

Relying on Milliken v. Meyer, 311 U. S., 457, 61 S. Ct., 339, 85 L. Ed., 278, the husband further contends that regardless of "matrimonial domicile" personal service was unnecessary because Mrs. Armstrong was actually domiciled in Florida at the time the Florida action was brought. The Florida court did find she was domiciled there, but that was in an uncontested proceeding. This finding was open to challenge in Ohio. Williams v. State of North Carolina, 325 U. S., 226, 65 S. Ct., 1092, 89 L. Ed., 1577. The issue was tried in Ohio with both parties present, and the trial court expressly found that Mrs. Armstrong had returned to Ohio and was a "resident" there within the meaning of the Ohio divorce statute at the time the Florida divorce proceedings were instituted. See Page's Ohio Rev. Code Ann. 1954, §3105.03 R. C. This statute has been uniformly interpreted by the Ohio courts to require residence accompanied by an intention to make the State of Ohio a permanent home. See, e. g., Saalfeld v. Saalfeld, 86 Oh Ap 225, 41 O. O. 94, 89 N. E. (2d), 165. We would accept the Ohio court's finding that Mrs. Armstrong was such a resident of Ohio when the Florida suit was brought as amply supported by evidence in the record. Consequently the husband's reliance on Milliken v. Meyer is misplaced.

There was nothing novel in our holding in Estin v. Estin that a State where one of the parties to a marriage is domiciled can dissolve the

2. Williams v. State of North Carolina, 317 U. S., 287, 63 S. Ct., 207, 87 L. Ed., 279; Id., 325 U. S., 226, 65 S. Ct, 1092, 89 L. Ed., 1577. In the latter case the Court said: "In view of Williams v. (State of) North Carolina, supra, the jurisdictional requirement of domicil is freed from confusing refinements about 'matrimonial domicil' * * * and the like." 325 U. S., at page 230, 65 S. Ct., at page 1095.

marriage without personal service but that it cannot render a personal decree granting or denying alimony. The distinction between a decree which grants a divorce and one which grants a personal money judgment was recognized and the reasons for the distinction were stated by this Court in Pennoyer v. Neff, 95 U. S., 714, 24 L. Ed., 565.[3] The state courts have long recognized the rule that a court lacking personal jurisdiction over a husband cannot render a valid alimony judgment against him.[4] We see no reason why a court lacking personal jurisdiction over a wife should be allowed to render a valid judgment denying alimony to her.[5] Personal jurisdiction is as necessary to protect a wife's interests

3. "* * * we do not mean to assert, by any thing we have said, that a State may not authorize proceedings to determine the status of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. * * * The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal service of process or personal notice to the offending party, the injured citizen would be without redress." Pennoyer v. Neff, 95 U. S., at pages 734-735.

As early as 1832 the distinction received recognition in a state court. Harding v. Alden, 9 Me., 140. There the court said:

"In giving effect here to the divorce decreed in Rhode Island, we would wish to be understood, that the grounds upon which we place our decision, is limited to the dissolution of the marriage. In the libel, alimony was prayed for; and certain personal property, then in the possession of the wife, was decreed to her. Had the court awarded her a gross sum, or a weekly or an annual allowance, to be paid by the husband, and the courts of this or any other State had been resorted to to enforce it, a different question would be presented * * *." 9 Me., at page 151. See also 2 Kent's Commentaries (14th ed., Gould, 1896) *110, n. (a).

4. Beard v. Beard (1863), 21 Ind., 321; Ellison v. Martin (1873), 53 Mo., 575; Prosser v. Warner (1875), 47 Vt., 667; Bunnell v. Bunnell (C. C. 1885), 25 F., 214; Anderson v. Anderson (1893), 55 Mo. App., 268; Dillon v. Starin (1895), 44 Neb., 881, 63 N. W., 12; De La Montanya v. De La Montanya (1896), 112 Cal., 101, 44 P., 345, 32 L. R. A., 82. See also Barrett v. Failing, 111 U. S., 523, 525, 4 S. Ct., 598, 599, 28 L. Ed., 505. And see 2 Bishop, Marriage & Divorce (6th ed. 1881), §381a; Cooley, Constitutional Limitations (6th ed., Angell, 1890) 497-498.

5. See, e. g., Turner v. Turner (1870), 44 Ala., 437, 450; Vanderbilt v. Vanderbilt (1955), 1 App. Div. (2d), 3, 147 N. Y. S. (2d), 125, stayed pending appeal (1956), 309 N. Y., 971, 132 N. E. (2d), 333; Hopson v. Hopson, 95 U. S. App. D. C., 285, 221 F. (2d), 839.

as it is to protect a husband's. It is an essential to this kind of determination. Not long after Pennoyer v. Neff was decided, this Court upheld the validity of a legislative divorce which was granted without notice, service of process or a hearing of any kind, judicial or otherwise. Maynard v. Hill, 125 U. S., 190, 8 S. Ct., 723, 31 L. Ed., 654.[6] But legislative divorces attempting to create or destroy financial obligations incident to marriage have not been sustained by the courts.[7] Thus the different treatment Estin v. Estin accorded to alimony and divorce is well grounded in the judicial and legislative history of our country.

It is argued that this case is controlled by Thompson v. Thompson, 226 U. S., 551, 33 St. Ct., 129, 57 L. Ed., 347. That case, however, was decided before the Williams cases, the Estin and Kreiger cases, and May v. Anderson. It relied, moreover, on the case of Atherton v. Atherton. 181 U. S., 155, 21 S. Ct., 544, 45 L. Ed., 794, which in holding that an ex parte divorce was entitled to full faith and credit itself quoted extensively from authorities recognizing that such a divorce may be binding " 'so far as related to the dissolution of the marriage, though not as to other parts of the decree, such as an order for the payment of money by the husband.' " 181 U. S., at 166, 21 S. Ct., at page 548. The Thompson case stands alone in the United States Reports in supporting the proposition that a valid ex parte divorce in one State cuts off alimony rights in another.[8] To the extent that the Thompson decision can be considered as in any way inconsistent with Pennoyer v. Neff and Estin v. Estin, the Thompson case should no longer be considered to be the law.

For the foregoing reasons we concur with the Court in affirming the judgment of the Supreme Court of Ohio.

WARREN, CJ, DOUGLAS and CLARK, JJ, concur.

---

6. In that case the Court said: "If the act declaring the divorce should attempt to interfere with the rights of property vested in either party, a different question would be presented." 125 U. S., at page 206, 8 S. Ct., at page 727.

7. Crane v. Meginnis (1829), 1 Gill & J., Md., 463; Wright v. Wright's Lessee (1852), 2 Md., 429. See also 1 Bishop, Marriage & Divorce (6th ed. 1881), §693; 2 id., §382; 2 Schouler, Marriage, Divorce, Separation and Domestic Relations (6th ed., Blakemore, 1921), §§1471-1473.

8. It may be noted that this question was not argued by the wife in the Thompson case. And the District of Columbia Court of Appeals stated "it was conceded at bar that, if the Virginia decree was not void, this action could not, upon any theory, be maintained." 35 App. D. C., 14, 26.