Fuld, J.
(dissenting). In my opinion, section 1170-b of the Civil Practice Act as here construed and applied offends against the full faith and credit clause of the Federal Constitution, and neither Estin v. Estin (334 U. S. 541, affg. 296 N. Y. 308) nor Armstrong v. Armstrong (350 U. S. 568) supports a contrary conclusion.
*354 It is settled in this state that the duty of support flows from the marital status. And, before the enactment of section 1170-b in 1953, when that status terminated, so too did the duty of support, except insofar • as provision for continued support may have been made in the judgment dissolving the marriage. “ Such a claim in itself furnishes no foundation for a cause of action; it is a mere incident of the judgment in a matrimonial action ”. (Querze v. Querze, 290 N. Y. 13, 18; see Weintraub v. Weintraub, 302 N. Y. 104, 108.)
There is no doubt that the marriage between plaintiff wife and defendant husband was effectually terminated by the Nevada divorce decree which defendant procured in June of 1953. Although the wife was not subject to the personal jurisdiction of the Nevada court, that tribunal was unquestionably empowered to adjudicate the termination of the marriage at the suit of the husband who was domiciled in that state. (See Estin v. Estin, supra, 334 U. S. 541, 544; Williams v. North Carolina, 317 U. S. 287.) And examination of the decree then rendered demonstrates that it also provided for the termination of defendant’s duty to support plaintiff. In so many words, it recited that the marriage between the parties was “ dissolved absolutely and forever, and they hereby are freed and released from the bonds of matrimony and all the duties and obligations thereof”. Under Nevada’s decisional law, it seems clear that, in the absence of a provision either awarding alimony to the wife or reserving jurisdiction to do so, “ there can be no grant of alimony after such a divorce ”. (Sweeney v. Sweeney, 42 Nev. 431, 438-439; see Lynn v. Lynn, 302 N. Y. 193, 203, cert. denied 342 U. S. 849.) That being so, it follows that the decree granted to defendant by the Nevada court must be taken as having cut off plaintiff wife’s right to alimony. (See Lynn v. Lynn, supra, 302 N. Y. 193, 203-204.)
A different case would have been presented if, prior to the termination of the marriage by the Nevada divorce decree, the New York courts had adjudicated with respect to defendant’s duty of support and had rendered a judgment against him directing payment of such support. The wife’s property right in the judgment would then have assumed a status independent of the continuance of the marital relationship, and the subsequent dissolution of the marriage by divorce would have been ineffectual in and of itself to deprive the wife of that property right — *355 unless the divorcing court had acquired personal jurisdiction over the wife and had adjudicated with respect to her rights in the support judgment. That was the extent of the decision in Estin v. Estin (supra, 334 U. S. 541, affg. 296 N. Y. 308; see, also, Lynn v. Lynn, supra, 302 N. Y. 193, 202). Emphasizing that New York had “ evinced a concern with this broken marriage when both parties were domiciled in New York and before Nevada had any concern with it” (334 U. S., at p. 547), the Supreme Court stressed as dominant the existence of the New York judgment (particularly pp. 548-549; also, dissent of Fbaitketjbteb, J., pp. 549-550) and treated it as “a property interest ” with a separate status of its own (p. 548):
“ The New York judgment is a property interest of respondent, created by New York in a proceeding in which both parties were present. It imposed obligations on petitioner and granted rights to respondent. The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing. Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations.”
In 1953, the statute now under consideration, section 1170-b of the Civil Practice Act, was passed to empower our courts to award alimony to a wife, against whom the husband had procured a valid ex parte divorce, even though she had not previously obtained a judgment or order for support. (See 1953 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1953, No. 65 (K)], pp. 463-480; The Commission and The Courts, 40 Cornell L. Q. 646, 656.) But that did not mean that the courts of this state would be authorized under all circumstances to award the wife such alimony. If, for. instance, the court of the other jurisdiction granting the divorce had actually decided to terminate the husband’s duty of support and deny alimony to the wife, then the Federal Constitution would compel our courts to accord to .that portion of the judgment, as well as to the part terminating the parties’ marital status, full faith and credit and deny the wife’s application for maintenance under the 1953 statute.
In other words, section 1170-b may be applied validly, that is, consistently with the dictates of the full faith and credit *356 clause, only where the earlier ex parte judgment of divorce “ did not purport to adjudicate the absent wife’s right to alimony.” (Armstrong v. Armstrong, supra, 350 U. S. 568, 569.) In such a case, to quote from Armstrong, the courts of the second state (Ohio), “in awarding alimony to the wife, did not in fact fail to give full faith and credit to the Florida decree ” (350 U. S., at p. 569.) However, in so deciding, as Mr. Justice Minton observed for the majority (p. 569), the court did not reach the question whether the courts of the second state may disregard the determination in the prior divorce action that the wife was not entitled to support.
In such a case as the present, where the earlier Nevada decree in effect denied alimony to the wife (see, supra, pp. 354-355),[1] section 1170-b may be constitutionally invoked only on the theory that Nevada, while having jurisdiction to adjudicate the termination of the marital relationship, lacked the power, as a matter of due process, to adjudicate the concomitant termination of incidents of that relationship, which have no independent status of their own. To that I cannot subscribe. Any such arbitrary differentiation, between the marriage status and its inseparable incidents, not only does violence to basic principles of logic, but flies in the face of the constitutional requirement that the Nevada judgment be given full faith and credit. (Cf. Estin v. Estin, supra, 334 U. S. 541, 554, per Jackson, J., dissenting.)
The deceptive appeal of the phrase “ divisible divorce ” should not be permitted to obscure the basic concepts involved. A finding of divisibility may be appropriate where, as in Estin, the particular right at issue is a distinct property right, embodied in a previously granted judgment, which is no longer dependent, for its recognition or enforcement, upon the marital relationship, or where, as in Armstrong, the court rendering the divorce has itself severed the issue of support and left it subject to separate adjudication in the future. The situation is, however, decidedly different where, as in the case before us, the claim asserted depends for its very existence on the continuance of the marital status and that status and its incidents *357 have both been terminated by a jurisdictionally valid judgment of divorce.
I find myself unable to agree with the contrary views expressed by the minority of the Supreme Court, through Mr. Justice Black, in the Armstrong case (supra, 350 U. S. 568, 575 et seq.), to the effect that the court rendering the ex parte divorce has no jurisdiction to pass upon the question of alimony. Justice Black reached that conclusion on the assumption that the denial of alimony constituted the rendition of “ a personal judgment ” against the wife “ depriving her of all right to alimony ’ ’. I cannot accept that reasoning, for it seems to me to rest on the erroneous premise that a mere incident of the marital status, which 11 in itself furnishes no foundation for a cause of action” (Querze v. Querze, supra, 290 N. Y. 13, 18), is the equivalent of an independent right.
In any event, however, the present case would seem to fall outside of the underlying policy of section 1170-b. At the time the Nevada judgment of divorce was rendered, plaintiff wife had no standing in New York to maintain the present action for separation and, by that token, had no enforcible right to invoke the benefits of the section. "Where the husband is not a resident of this state and the parties were not married here, the wife does not have standing to maintain an action for separation unless she has been a resident of the state ‘ ‘ for at least one year continuously at any time prior to the commencement of the action ” (Civ. Prac. Act, § 1165-a). Plaintiff first selected this state as her place of continuous residence in February, 1953, only one month before defendant instituted suit in Nevada and but four months before the divorce decree was granted by that state.
Section 1170-b authorizes an award of support “ as justice may require ”, and the legislative design is thus made clear that any award must be consistent with the public policy of the state. Obviously, the legislative purpose was to deal with broken marriages with which New York was directly concerned. (See Estin v. Estin, supra, 334 U. S. 541, 549.) In order not to pervert that aim, the grant of relief should be restricted to a case where there is a substantial nexus between the particular marriage and this state. To read the statute as opening the door to wives from other states who take up residence in this state, solely for the purpose of invoking section *358 1170-b, after the rendition of an ex parte judgment of divorce in another state, or on the eve of judgment or the institution of the divorce action, not only goes far beyond the legislative purpose, but also serves to flout the principle underlying the full faith and credit clause.
Only by confining the statute to the situation where the wife had standing to institute the matrimonial action in this state at the time that the foreign divorce was granted, may New York’s dealings with such a broken marriage be restricted “ to the matters of her dominant concern ” (Estin v. Estin, supra, 334 U. S., at p. 549) and unseemly conflicts between this state and other jurisdictions avoided.
The complaint should have been dismissed. Accordingly, the judgment should be modified by deleting all but the first adjudging paragraph thereof, and, as so modified, affirmed, with costs in all courts.
Conway, Ch. J., Froessel, Van Voorhis and Burke, JJ., concur with Desmond, J.; Fuld, J., dissents in an opinion in which Dye, J., concurs.
Judgment affirmed.

. As noted above, the Nevada decree here involved did in terms free and release the husband from “ all the duties and obligations ” flowing from the marital relationship, and that terminated the wife’s right to support. (See Sweeney v. Sweeney, supra, 42 Nev. 431, 438-439; Lynn v. Lynn, supra, 302 N. Y. 193, 203.)