**William A. DORNEY, Appellant,**

v.

**Mabel P. DORNEY, Appellee.**

No. 7385.

United States Court of Appeals Fourth Circuit.

Argued April 11, 1957.

Decided May 27, 1957.

E. Franklin Pauley, Charleston, W. Va. (Pauley & Andrews, Charleston, W. Va., on brief), for appellant.

J. Campbell Palmer, III, Charleston, W. Va. (Palmer & Elkins, Charleston, W. Va., and Burns, Calderwood, Bryant & Hinchney, Dover, N. H., on brief), for appellee.

Before PARKER, Chief Judge, SOBE-LOFF, Circuit Judge, and PAUL, District Judge.

PAUL, District Judge.

This is an appeal by William A. Dorney from a judgment in the sum of $10,-050 entered against him as the defendant in an action in which Mabel P. Dorney, his former wife, was plaintiff. The amount of the judgment represented the accumulated arrears of monthly payments which had been awarded to Mabel P. Dorney for her separate maintenance in a proceeding in the Superior Court of Rockingham County, New Hampshire.

The material facts leading up to the rendition of the judgment are substantially as follows:

For some years prior to April 6, 1950, the parties hereto, as husband and wife, had been living in Portsmouth, New Hampshire. On the date mentioned William A. Dorney filed a libel for divorce against Mabel P. Dorney in the Superior Court of Rockingham County, New Hampshire. (For convenience and to avoid confusion the parties will hereinafter usually be referred to as husband and wife.) For some reason, not indicated, the divorce action in New Hampshire does not seem to have been vigorously pressed by the husband and on September 15, 1951, while the New Hampshire action was still pending, he moved to Reno, Nevada, and established a domicile there.

On October 15, 1951, through counsel representing him in New Hampshire, the husband filed a motion for permission to dismiss the New Hampshire proceeding without prejudice. The wife appeared and objected to the dismissal, and the court took no action on the motion at that time.

On October 29, 1951, the husband filed suit for divorce in Nevada. Service was made upon the wife by publication and she had actual knowledge of the Nevada action but she made no appearance in it.

On November 16, 1951, the wife for the first time filed an answer in the action which was still pending in New Hampshire and also filed a cross-petition praying for separate maintenance. Copies of this answer and cross-petition were served on the husband's counsel of record in New Hampshire.

On December 3, 1951, the husband obtained in Nevada a decree granting him a divorce and which also directed that he pay to the wife the sum of $50 per month for her support.

Subsequently a hearing was had in the New Hampshire court on the previously-filed motion of the husband to dismiss his divorce action pending there and on the cross-petition of the wife for separate maintenance. The court denied the husband's motion for a voluntary dismissal. Thereafter his counsel declined to partic-

ipate further in the proceedings and, after hearing only the evidence for the wife, the court granted her petition for separate maintenance in the amount of $250 a month and dismissed the plaintiff's action "on its merits." The husband appealed to the Supreme Court of New Hampshire, resting his appeal on the contentions that (1) he was entitled to the granting of his motion for a voluntary dismissal of his libel as a matter of right; (2) that such dismissal was effective as of the date his motion therefor was filed; (3) that dismissal of the libel effected a dismissal of the cross-petition filed thereafter, leaving the court without jurisdiction over the husband in connection with the cross-petition. See Dorney v. Dorney, 98 N.H. 159, 96 A.2d 198, 199.

Because of its bearing on the important question involved in this case it seems desirable to refer at some length to the opinion of the Supreme Court of New Hampshire. That court agreed that the plaintiff, having filed a motion for voluntary dismissal of his action before any hearing had begun on the merits and before the filing of any answer or cross-petition seeking affirmative relief, was entitled to have his motion granted as a matter of right. But it pointed out very definitely that the voluntary dismissal did not relate back to the date when the motion therefor was filed and did not carry with it a dismissal of the wife's cross-petition. The following excerpts from the court's opinion make clear its holding:

"The mere filing of a motion or request for a voluntary dismissal does not operate to put an end to the action automatically. * * * 'The plaintiff cannot discontinue his suit without the privity of the court'. [Citing N. H. cases.] The nature of the motion is such that some action on it by the court is contemplated and required. The circumstances under which it is filed determine whether the granting of it is a matter of the court's discretion * * * or a matter of right * * *. An order of the court granting such a

motion is not in itself a judgment but is only the basis upon which a final decree may be entered at the established judgment day, unless otherwise ordered. [Citing N. H. cases.] * * * It is not until a judicial determination has been reduced to judgment that an action is finally terminated."

The court then goes on to say that where a defendant does not appear or, if appearing, offers no objection to a plaintiff's motion for voluntary dismissal, the motion is ordinarily granted as a matter of course. But it continues:

"Where objection is seasonably made to the granting of the motion, as in the case at bar, the action is pending on the docket until the motion is heard and, if granted, until the order granting it has gone to judgment. The date on which a voluntary dismissal goes to judgment is its effective date. It does not relate back to the date of the filing."

The court then continues thus:

"The plaintiff chose his forum and submitted himself to the jurisdiction of the court by seeking a divorce. Until the voluntary dismissal of his action goes to judgment, he is subject to the court's jurisdiction. The defendant came into court seeking affirmative relief while the plaintiff's action against her was still pending and while the plaintiff was represented in his action by counsel of his own choosing. * * * It has been a long standing practice in this state to treat cross-petitions seeking affirmative relief as pleadings in the original action. No service thereon is required but copies of all pleadings filed in court are required to be forwarded forthwith 'to all other parties to the action or their counsel.' Superior Court rule 15, 93 N. H.Appendix. A copy of the defendant's pleadings was sent to and received by plaintiff's counsel at the time of their filing in court. Jurisdiction over the plaintiff in connection with the matters contained in

the cross-petition was thereby secured."

The court thereupon affirmed the judgment of the lower court of July 28, 1952, granting the wife $250 a month for her separate maintenance.

The husband had resided in Nevada during the proceedings on the wife's petition for separate maintenance and apparently continued to live there for several years after the entry of the judgment against him in New Hampshire. It does not appear whether, during these years, the wife made any attempt to enforce her judgment for separate maintenance or whether her attempts were fruitless. However in 1956 the husband became a resident of West Virginia and the wife, learning of this, brought suit in the United States District Court for the Southern District of West Virginia to collect the arrears due her under the New Hampshire judgment. There being no issue of fact the case was considered on a motion for summary judgment, resulting in the judgment in favor of the wife from which the husband has taken this appeal.

The issues in the case are very narrow. No question has been raised as to the validity of the Nevada divorce obtained by the husband. At the same time counsel for the husband has conceded in argument before this court that the provision of the Nevada decree granting the wife $50 a month alimony does not bind her in any way, because of the fact that the wife was never personally served with process in Nevada and never appeared in the suit there. See Estin v. Estin, 334 U.S. 541, 548, 68 S.Ct. 1213, 92 L.Ed. 1561, and cases there cited.

Indeed the appellant, in his brief, states the issue in the case in these words:

"Is there jurisdiction and authority in a United States District Court to enter judgment based on a decree for separate support for a wife, rendered in New Hampshire by a New Hampshire court and entered subsequent to a valid foreign divorce granted to a husband where there was no personal service upon the husband in the separate support action in New Hampshire."

Out of this the appellant offers two grounds of attack. The primary one and that to which he devotes his argument is the contention that there was no personal service on the husband of the wife's petition for maintenance and that therefore the New Hampshire court was without jurisdiction to render a money judgment against him. The appellant also advances the contention that the marital relationship had been ended by the Nevada decree prior to the time the New Hampshire court entered judgment on the wife's petition and that when the latter court acted the parties were no longer husband and wife. The argument appears to be that any decree for alimony or separate maintenance must be made at the time the divorce is granted or in the course of the divorce proceeding and cannot be entered in a separate proceeding after the marriage has been terminated. In argument the appellant relies primarily on the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, and cites also Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, and Armstrong v. Armstrong, 350 U.S. 568, 76 S.Ct. 629, 100 L.Ed. 705.

Pennoyer v. Neff is the oft-cited case laying down the principle that a personal judgment rendered by a state court in an action upon a money demand against a nonresident is invalid where there was no personal service of process upon the defendant within the state and no appearance by him in the action. There can be no quarrel with this principle which is now settled law. But we cannot agree with appellant's efforts to apply it to the instant case. The New Hampshire court held that the state court had jurisdiction of the person of the husband by virtue of the fact that he had voluntarily instituted an action in that court which was still pending. It further held that the service of the wife's cross-petition on counsel was in accordance with established practice in the New Hamp-

shire courts, which, apparently, is similar to that existing in the Federal courts as provided in Rule 5(a) and (b) of the Rules of Civil Procedure, 28 U.S.C.A. We think it is plain that the New Hampshire court had jurisdiction of the person of the husband in connection with the matters contained in the wife's cross-petition.

While we do not feel that the cases of Estin v. Estin, supra, and Armstrong v. Armstrong, supra, offer help to the appellant, his earnest insistence on their applicability impels us to a discussion of what was decided in them. In the Estin case the facts, briefly stated, were as follows: The parties were living in New York prior to 1942, in which year the husband left the wife. In 1943 she brought an action against him in New York for a separation in which he entered a general appearance. In this proceeding the court granted her a decree of separation and awarded her $180 a month as permanent alimony. A year or two later the husband went to Nevada and procured an absolute divorce in an action there of which the wife was notified by constructive service but entered no appearance. The Nevada decree made no provision for alimony. Prior to getting his divorce in Nevada the husband had been making the alimony payments ordered by the New York decree, but after getting his divorce he stopped paying; whereupon the wife sued him in New York for the arrears. The husband appeared in this action and moved to eliminate the alimony provisions of the separation decree by reason of the Nevada decree. The court denied the motion and gave the wife judgment for the arrears. This judgment was affirmed on successive appeals through the courts of New York State.

The Supreme Court of the United States granted certiorari and in argument before that court the husband stressed the contention that the Nevada divorce decree severed the relation of husband and wife, that under the law of New York alimony is payable only so long as the relation of husband and wife exists, and that in New York a support order does not survive divorce. In commenting on this contention the court said [334 U.S. 541, 68 S.Ct. 1216]:

> "The difficulty with that argument is that the highest court in New York has held in this case that a support order can survive divorce and that this one has survived petitioner's divorce. That conclusion is binding on us, except as it conflicts with the Full Faith and Credit Clause. * * * The only question for us is whether New York is powerless to make such a ruling in view of the Nevada decree."

After noting the unquestioned validity of the support order when entered and the interest of the State of New York in the protection and in the financial welfare of its domiciliaries, the court, in affirming the New York court [296 N.Y. 308, 73 N.E.2d 113], said:

> "The Nevada decree that is said to wipe out respondent's claim for alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an *in personam* jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. * * *
>
> "The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony."

In Armstrong v. Armstrong, 350 U.S. 568, 76 S.Ct. 629, 633, 100 L.Ed. 705, the facts were that the husband while residing in Florida filed a suit for divorce from his wife who had separated from him and established a residence in Ohio. Service on the wife in this divorce action was constructive only; she was not per-

sonally served and made no appearance in the suit. A divorce was granted the husband in a decree containing among other recitals, this language dealing with the matter of alimony:

"This court, therefore, finds the defendant has not come into this court in good faith or made any claim to the equitable conscience of the court and has made no showing of any need on her part for alimony. It is, therefore, specifically decreed that no award of alimony be made to the defendant."

Later the wife instituted a suit in Ohio for divorce and alimony. The husband appeared in that suit and set up the divorce obtained by him in Florida. The Ohio court denied the wife's prayer for a divorce, because the Florida court had already decreed a divorce to the husband, but the Ohio court proceeded to pass on the question of alimony and granted alimony to the wife. The judgments were affirmed by the Ohio appellate courts [99 Ohio App. 7, 130 N.E.2d 710; 162 Ohio St. 406, 123 N.E.2d 267].

On certiorari to the Supreme Court of the United States the husband contended that the Ohio courts had denied full faith and credit to the Florida decree in that, as the husband contended, that decree had not only granted him a divorce but had passed on and denied the wife's right to alimony. The entire membership of the Supreme Court concurred in affirming the judgment of the Ohio court but from different approaches. The majority of the court took the view that the Florida court had not determined the wife's right to alimony. Referring to that part of the decree hereinbefore quoted, the court said:

"Taken literally, that language means only that, for the reasons it gave, the court would refrain from making an affirmative award of alimony to the wife, not that it adjudicated in favor of the husband that his wife was not entitled to alimony."

With this view the court held that the Ohio court did not in fact fail to give full faith and credit to the Florida decree. Or conversely stated, that it had given full faith and credit to everything that the Florida court had decided.

A minority opinion took the view that the Florida decree had undertaken to determine the question of alimony. Noting the wording of the decree it said:

"This was plainly a denial of alimony, not on the ground that the court was leaving the matter open but because the judge thought the wife should not have alimony."

However the minority held to the opinion that while the Florida decree undertook to adjudicate the question of alimony, Ohio was not compelled to give full faith and credit to that portion of the decree. This view was based on the fact that the wife had never been personally served with process in Florida in the proceeding in that state and had not appeared therein, and that for this reason the Florida court was without power to render a personal judgment against the wife depriving her of her right to alimony. Citing Pennoyer v. Neff, supra.

In neither the Estin case nor the Armstrong case was there any holding that the divorce decree, in itself and because it severed the relation of husband and wife, terminated the right of the wife to alimony. In both cases the judgments for alimony were upheld; one of them entered before the divorce was granted to the husband, the other one afterward. It may be that the appellant here seeks to point out that in both of these cases the husbands personally appeared in the proceedings in which alimony was adjudged against them and thereby to emphasize the principle that personal service of process or appearance in an action is a necessary foundation for a judgment *in personam*—a condition which he claims did not exist as regards the judgment for support entered against him. The whole case comes back then to the single question of whether the New Hampshire court had jurisdiction of the person of the appellant when it rendered its judgment for separate maintenance in favor of his wife. The New Hampshire court

held, for the reasons set out in its opinion heretofore quoted, that it did. We agree. The judgment was a valid one and the District Court, quite correctly, held that it was entitled to full faith and credit in that court. The judgment of the District Court is affirmed.

Affirmed.